UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EHLEN FLOOR COVERING, INC., a Florida corporation, EDWARD EHLEN, an individual, THOMAS EHLEN, an individual,

    Plaintiffs,

vs.                                    Case No.  2:07-cv-666-FtM-29DNF

JEFFREY LAMB, individually, BRIAN YOUNGS, individually, THOMAS WANDERON, individually, LWY ASSOCIATES, INC., formerly known as Tax Accounting and Financial Associates, Inc., INDEPENDENT ADVISORS OF FLORIDA, INC., formerly known as Foundation Asset Management, Inc., THE GRADUATE GROUP, INC., a Florida corporation, PACIFIC LIFE INSURANCE COMPANY, a Nebraska corporation,

    Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court on plaintiffs' Motion to Remand and Abstain (Doc. #27) filed on November 16, 2007. Defendant Pacific Life Insurance filed a Response (Doc. #33) on December 20, 2007. Also before the Court is defendant The Graduate Group, Inc.'s Motion to Dismiss (Doc. #24) filed on November 2, 2007, to which plaintiffs filed a Response (Doc. #28) on November 26, 2007.

**I.**

On October 12, 2007, plaintiffs filed a twelve count Complaint (Doc. #2) in state circuit court in the Twentieth Judicial Circuit

in and for Collier County, Florida. The Complaint alleges the following facts: Edward and Thomas Ehlen are officers, directors, and employees of Ehlen Floor Coverings, Inc. ("Ehlen Floor"). (Doc. #2, ¶¶ 3-4.) Defendant Thomas Wanderon ("Wanderon") supervises defendants Jeffery Lamb ("Lamb") and Brian Youngs ("Youngs") and all three are principals of defendants Financial Asset Management ("FAM") and Tax, Accounting and Financial Associates, Inc. ("TAFA"). (Doc. #2, ¶¶ 5-9.) Wanderon, Lamb, Youngs, FAM, and TAFA all had a close, confidential relationship with Ehlen Floor. (Id.) Lamb and Youngs did not disclose to plaintiffs that they had an ongoing business relationship. (Doc. #2, ¶17.) Defendants The Graduate Group ("TGG") and Pacific Life Insurance Company ("Pacific Life") designed, developed, and marketed plaintiffs' pension plan. (Doc. #2, ¶¶ 10-11.)

In late 2002, Lamb recommended that Ehlen Floor implement a defined benefit pension program for its employees. Ehlen Floor hired Youngs to assist in creating the plan. Lamb then presented a 412(i) plan proposal ("the plan") to Ehlen Floors which they approved.[1] (Doc. #2, ¶25.)

Pacific Life and TGG designed the plan and were responsible for its initial administration. In 2003, Innovative Pension Strategies, Inc. ("IPS") assumed responsibility from TGG for

---

[1] A 412(i) plan is a defined benefit retirement plan governed by Internal Revenue Code § 412(i) and is subject to certain rules, including the "100 Times Rule," the "Less Than 50% Rule," and a prohibition on "springing cash values."

administering the plan. IPS discovered several material flaws in the initial design of the plan which could result in adverse tax consequences. (Doc. #2, ¶¶ 26-29.) IPS arranged to have Ehlen Floor amend the plan to comply with IRS regulations and delivered the proposed amendments to TGG for adoption. (Id. at ¶30.) Plaintiffs were neither aware that the amendments were to cure defects in the plan nor that the plan was flawed. IPS, believing the amendments were adopted began administered the plan. Plaintiffs have been unable to locate records showing adoption of the amendments and the IRS does not acknowledge that the amendments were ever made.

In early 2004, the IRS promulgated guidelines indicating that a 412(i) plan with a beneficiary payout limitation would be classified as a listed transaction subject to reporting requirements and substantial penalties and sanctions. IPS determined that Plaintiffs' plan would likely be viewed as a listed transaction and thus IPS prepared additional amendments to cure the defect. TGG and Pacific Life did not notify plaintiffs of the new IRS guidelines nor of any action needed to conform with the IRS reporting requirements.[2]

In 2005, the IRS offered Ehlen Floor a settlement with respect to its pension plan. Lamb and Youngs consulted with TGG and informed plaintiffs that the plan conformed with IRS regulations

---

[2] Specifically, plaintiffs were never informed of the need to file IRS Form 8886 for every listed transaction.

and that plaintiffs did not need to accept the settlement offer. Plaintiffs relied on the advice of Lamb and Young and rejected the settlement offer. (Doc. #2, ¶¶ 37-38.)

In a letter dated March 6, 2006, the IRS notified Ehlen Floors that the plan had been selected for audit for the year 2003. The IRS claims that plaintiffs' plan violates certain provisions of the Internal Revenue Code (IRC). Throughout the course of the audit the IRS has taken the position that the plan violates various provisions of the IRC. (Doc. #2, ¶41.)

Plaintiffs filed the instant action in state court alleging: in Counts I and II, that Lamb and Youngs were negligent in advising plaintiffs on the design, implementation and administration of the plan and with regard to the IRS' 2005 settlement offer; in Counts III, IV, and V that Wanderon, TAFA and FAM are vicariously liable for Lamb and Youngs' negligence; in Count VI that TGG was negligent in the design, implementation, and initial administration of the plan; in Count VII that Lamb, Youngs, Warderon, TAFA, FAM and TGG were negligent in failing to adopt amendments to the plan or in the alternative of retaining records of such amendments; in Count VIII that Pacific Life was negligent in designing the plan and in failing to timely notify plaintiffs of the alleged flaws; in Count IX that all defendants violated Florida's Deceptive and Unfair Trade Practices Act (FDUTPA); in Count X that defendants negligently misrepresented the fact that the pension plan complied with IRS regulations; in Count XI that defendants fraudulently

misrepresented the fact that the pension plan complied with IRS regulations; and in Count XII that defendants breached their fiduciary duties to plaintiffs.

On October 12, 2007, Pacific Life filed a Notice of Removal (Doc. #1) to this Court on the basis of federal question jurisdiction. Specifically, Pacific Life asserts that this action "asserts claims falling within the scope of, the exclusive civil enforcement provisions of the Employee Retirement Income Security Act of 1974 ("ERISA")." (Doc. #1, ¶3.) Plaintiffs now seek to remand the case to state court.

## II.

Removal jurisdiction exists only where the district court would have had original jurisdiction over the action, unless Congress expressly provides otherwise. 28 U.S.C. § 1441(a); Darden v. Ford Consumer Fin. Co., 200 F.3d 753, 755 (11th Cir. 2000). On a motion to remand, the party seeking to invoke federal jurisdiction bears the burden of establishing the jurisdiction of the federal court. Triggs v. John Crump Toyota, 154 F.3d 1284, 1288 n.4 (11th Cir. 1998); Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996), cert. denied, 520 U.S. 1162 (1997). Thus, the burden of establishing federal question jurisdiction in this case is upon defendants.

In this case, Pacific Life invoked federal question jurisdiction under 28 U.S.C. § 1331. A cause of action "arises

under" federal law pursuant to § 1331 only when plaintiff's well-pleaded complaint raises issues of federal law.

> We have long held that "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).

Rivet v. Regions Bank, 522 U.S. 470, 474-75 (1998). See also Blab T.V., Inc. v. Comcast Cable Commc'ns, Inc., 182 F.3d 851, 854 (11th Cir. 1999).

### III.

The doctrine of complete preemption creates federal question jurisdiction over ERISA claims plead as state law claims. Holloman v. Mail-Well Corp., 443 F.3d 832, 835 n.1 (11th Cir. 2006). ERISA's civil enforcement provision allows plan participants or beneficiaries to enforce their rights. 29 U.S.C. § 1132. Complete preemption, also known as "super preemption", exists when a plaintiff seeks relief under 29 U.S.C. § 1132. See Stern v. IBM, 326 F.3d 1367, 1371 (11th Cir. 2003).

On its face, the Complaint (Doc. #2) only asserts state law claims of negligence, breach of fiduciary duty, fraudulent misrepresentation and violation of the Florida Deceptive and Unfair Trade Practices Act. However, 29 U.S.C. § 1144(a) provides "the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." "ERISA preemption is not a gateway but a

barrier to state law causes of action, the effect of which is to completely displace state law claims." Amos v. Blue Cross-Blue Shield, 868 F.2d 430, 431 (11th Cir. 1989) (per curiam). Displaced state law claims include claims for common law causes of action such as breach of contract and negligent misrepresentation. See id.

A claim is completely preempted, regardless of the merits of the claim, when four factors are satisfied: (1) there must be a relevant ERISA plan; (2) the plaintiff must have standing to sue under the plan; (3) the defendant must be an ERISA entity; and (4) the plaintiff must seek relief akin to that available under 29 U.S.C. § 1132(a). Jones v. LMR Int'l, Inc., 457 F.3d 1174, 1178 (11th Cir. 2006); Butero v. Royal Maccabees Life Ins., 174 F.3d 1207, 1212 (11th Cir. 1999).

The first three factors are easily decided. First, the term "plan," as used in ERISA, refers to either an employee welfare benefit plan or an employee pension benefit plan. Whitt v. Sherman Int'l Corp., 147 F.3d 1325, 1330 (11th Cir. 1998). There is no dispute that the plan at issue in this case is a pension plan covered by ERISA. Second, a beneficiary is a "person designated by a participant . . . who is or may become entitled to a benefit [under a plan]." 29 U.S.C. § 1002(8). Plaintiffs Edward and Thomas Ehlen are entitled to benefits under the plan and thus have standing to sue. Third, ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan.

Morstein v. Nat'l Ins. Servs., 93 F.3d 715, 722 (11th Cir. 1996). Plaintiffs are the employers and the Complaint alleges a fiduciary relationship between all the defendants and the plaintiffs, thus rendering all the parties ERISA entities.

The disputed issue is whether the Complaint seeks relief akin to that available under 29 U.S.C. § 1132(a). Under § 1332, a beneficiary may seek relief "to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) Section 1132 also provides that a beneficiary or participant may seek relief under section 1109, which provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109. The principal statutory duties imposed on an ERISA fiduciary relate to the "proper management, administration, and investment of fund assets, the maintenance of proper records, [and] the disclosure of specified information, and the avoidance of conflicts of interest." Mass. Mut. Life Ins. v. Russell, 473 U.S. 134, 142 (1985); see also LaRue v. DeWolff, Boberg & Assocs., 128 S. Ct. 1020, 1024 (2008) (finding that "the principal statutory duties imposed on fiduciaries by [29 U.S.C. § 1109] relate to the

-8-

proper management, administration and investment of fund assets . . . .")

In this case, a portion of each count relates to either the administration of the plan or defendants' failure to disclose certain information. Specifically, each count alleges that either the defendants failed to correct existing flaws in the plan in order to insure the plan complies with IRS regulations or that they failed to disclose that the plan was flawed or that they had "confidential relationships" between one another. Furthermore, Count Seven relates to TGG's failure to keep records of proposed amendments meant to bring the plan into compliance with the IRC. (Doc. #2, ¶¶ 97.) Thus the Court finds that all the counts are completely preempted by ERISA's civil enforcement provision as they either relate to the administration of the plan or to a breach of a fiduciary duty.

The Court notes that E.I. DuPont De Nemours & Co. v. Sawyer, 517 F.3d 785 (5th Cir. 2008), a case submitted by plaintiffs (Doc. #48), supports the Court's finding that all twelve counts are completely preempted. In that case, the Fifth Circuit found that complete preemption does not apply to cases where plaintiffs "need not prove that any aspect of [defendants'] . . . administration of the employees' ERISA plan was improper." E.I. DuPont De Nemours & Co., 517 F.3d at 800. In this case, for plaintiffs to prevail, they will have to demonstrate that the various defendants did not properly administer the plan and/or that they breached their

fiduciary duties. Therefore, plaintiffs' Motion to Remand is denied because all twelve counts are completely preempted by ERISA's civil enforcement provisions.

**IV.**

Also before the Court is TGG's Motion to Dismiss. TGG asserts that the Complaint must be dismissed because plaintiffs' claims are preempted by ERISA or in the alternative because it is inadequately pled. (Doc. #24, p. 7.)

The Court has already found that plaintiffs' claims are subject to the ERISA complete preemption doctrine. As such, the state-law claims subject to ERISA complete preemption are not subject to dismissal but rather they are simply converted into federal causes of action. See Jones v. LMR Int'l, Inc., 457 F.3d 1174, 1178 (11th Cir. 2006)("state law claims that seek relief available under ERISA are recharacterized as ERISA claims and arise under federal law"); see also Ervast v. Flexible Prods., 346 F.3d 1007, 1014 (11th Cir. 2003)(explaining in ERISA context that "[s]uper preemption ... recharacterizes the state law claim into a federal claim under § 1132.") Therefore, TGG's motion is granted to the extent that plaintiffs' claims will be recharacterized as ERISA claims. Plaintiffs will be permitted to file an Amended Complaint recharacterizing their claims under ERISA.

Accordingly, it is now

**ORDERED:**

    1.   Plaintiffs' Motion to Remand and Abstain (Doc. #27) is **DENIED.**

    2.   The Graduate Group, Inc.'s Motion to Dismiss (Doc. #24) is **GRANTED** to the extent that the state law claims in the Complaint (Doc. #2) are **dismissed,** and the claims are recharacterized as claims brought under ERISA. Plaintiffs will be permitted to file an Amended Complaint asserting their claims under ERISA within **ELEVEN (11) DAYS** of the date of this Opinion and Order.

    **DONE AND ORDERED** at Fort Myers, Florida, this __3rd__ day of September, 2008.

                                        JOHN E. STEELE
                                        United States District Judge

Copies:
Counsel of record