UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EHLEN FLOOR COVERING, INC., a
Florida corporation, EDWARD EHLEN,
an individual, THOMAS EHLEN, an
individual,

                Plaintiffs,

vs.                              Case No. 2:07-cv-666-FtM-29DNF

JEFFREY LAMB, individually, BRIAN
YOUNGS, individually, THOMAS
WANDERON, individually, LWY
ASSOCIATES, INC., formerly known as
Tax Accounting and Financial
Associates, Inc., INDEPENDENT
ADVISORS OF FLORIDA, INC., formerly
known as Foundation Asset
Management, Inc., THE GRADUATE
GROUP, INC., a Florida corporation,
PACIFIC LIFE INSURANCE COMPANY, a
Nebraska corporation, INNOVATIVE
PENSION STRATEGIES, INC., and JOSEPH
PENCHANSKY,

                Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court on Defendant Joseph Penchansky's Motion to Dismiss Second Amended Complaint (Doc. #139) filed on September 4, 2009. Plaintiffs filed a Response (Doc. #143) on September 24, 2009.

**I.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 551

U.S. 89 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). The former rule -- that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) -- has been retired by Twombly. James River Ins. Co., 540 F.3d at 1274. Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). Alternatively, dismissal is warranted if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009-10 (11th Cir. 1992).

**II.**

On October 12, 2007, plaintiffs filed a twelve-count complaint. (Id.) Following an Opinion and Order (Doc. #58) that granted a motion to dismiss on the grounds that plaintiffs' claims

-2-

were preempted by the Employee Retirement Income Security Act of 1974 (ERISA), plaintiffs filed a four-count Second Amended Complaint (Doc. #117), on June 30, 2009.

The factual allegations in the original complaint, as supplemented and adopted by the Second Amended Complaint, are as follows: Edward and Thomas Ehlen are officers, directors, and employees of Ehlen Floor Coverings, Inc. (Ehlen Floor) (collectively plaintiffs). (Doc. #2, ¶¶ 3-4.) Defendant Thomas Wanderon (Wanderon) supervises defendants Jeffery Lamb (Lamb) and Brian Youngs (Youngs) and all three are principals of defendants Financial Asset Management (FAM) and Tax, Accounting and Financial Associates, Inc. (TAFA). (Id. at ¶¶ 5-9.) Wanderon, Lamb, Youngs, FAM, and TAFA all had a close, confidential relationship with Ehlen Floor. (Id.) Lamb and Youngs did not disclose to plaintiffs that they had an ongoing business relationship. (Id. at ¶ 17.) Defendants The Graduate Group (TGG) and Pacific Life Insurance Company (Pacific Life) designed, developed, and marketed plaintiffs' pension plan. (Id. at ¶¶ 10-11.) Defendant Eugene Gordon (Gordon) is the primary owner of TGG. (Doc. #117, ¶ 5). Defendant Joseph Penchansky (Penchansky) was an employee of TGG during the relevant time period. (Id. at ¶ 6.) Both Gordon and Penchansky acted on behalf of TGG with regards to plaintiffs' pension plan. (Id. at ¶¶ 5-6.)

In late 2002, Lamb recommended that Ehlen Floor implement a defined benefit pension program for its employees. Ehlen Floor

hired Youngs to assist in creating the plan. Lamb then presented a 412(i) plan proposal (the Plan) to Ehlen Floors which they approved.[1] (Doc. #2, ¶ 25.)

Pacific Life and TGG designed the Plan and were responsible for its initial administration. In 2003, Innovative Pension Strategies, Inc. (IPS) assumed responsibility from TGG for administering the Plan. IPS discovered several material flaws in the initial design of the Plan which could result in adverse tax consequences. (Id. at ¶¶ 26-29.) IPS arranged to have Ehlen Floor amend the Plan to comply with IRS regulations and delivered the proposed amendments to TGG for adoption. (Id. at ¶ 30.) Plaintiffs were neither aware that the amendments were to cure defects in the Plan nor that the Plan was flawed. IPS, believing the amendments were adopted, began administering the Plan. Plaintiffs have been unable to locate records showing adoption of the amendments and the IRS does not acknowledge that the amendments were ever made. (Id.)

In early 2004, the IRS promulgated guidelines indicating that a 412(i) plan with a beneficiary payout limitation would be classified as a listed transaction subject to reporting requirements and substantial penalties and sanctions. IPS determined that plaintiffs' plan would likely be viewed as a listed

---

[1] A 412(i) plan is a defined benefit retirement plan governed by Internal Revenue Code § 412(i) and is subject to certain rules, including the "100 Times Rule," the "Less Than 50% Rule," and a prohibition on "springing cash values."

transaction and thus IPS prepared additional amendments to cure the defect. TGG and Pacific Life did not notify plaintiffs of the new IRS guidelines nor of any action needed to conform with the IRS reporting requirements.[2] (Doc. #2, ¶¶ 31-34.)

In 2005, the IRS offered Ehlen Floor a settlement with respect to its pension plan. Lamb and Youngs consulted with TGG and informed plaintiffs that the Plan conformed with IRS regulations and that plaintiffs did not need to accept the settlement offer. Plaintiffs relied on the advice of Lamb and Youngs and rejected the settlement offer. (Id. at ¶¶ 37-38.)

In a letter dated March 6, 2006, the IRS notified Ehlen Floor that the Plan had been selected for audit for the year 2003. Throughout the course of the audit the IRS has taken the position that the plan violates various provisions of the Internal Revenue Code (IRC). (Id. at ¶¶ 40-41.)

Count I of the Second Amended Complaint is against all defendants and alleges a breach of fiduciary duty for failing to carry out their fiduciary responsibilities required by ERISA § 404 by engaging in self dealing and by knowing, enabling, or failing to remedy other defendants' breaches of fiduciary duty. Counts II-IV are only against IPS. Count II alleges negligence against IPS, in alternative to Count I, for failing to implement the attempted Plan amendments, and failing to notify plaintiffs regarding the material

---

[2] Specifically, plaintiffs were never informed of the need to file IRS Form 8886 for every listed transaction.

flaws in the Plan. Count III alleges a violation of Florida's Deceptive and Unfair Trade Practices Act for failing to disclose the Plan flaws to plaintiffs. Count IV is against IPS for misrepresentation that the Plan complied with the IRC and IRS regulations.

**III.**

Defendant Joseph Penchansky moves to dismiss the Second Amended Complaint. Only Count I, based on the ERISA breach of fiduciary duty, applies to Defendant Penchansky. Penchansky alleges that plaintiffs have failed to allege that he was a fiduciary, thus he is not subject to ERISA. Plaintiffs argue to the contrary.

The threshold question when determining whether there was a breach of fiduciary duty is whether the defendant is a "fiduciary." Pegram v. Herdrich, 530 U.S. 211, 226 (2000). Pursuant to ERISA, fiduciaries can either be named fiduciaries in the plan or:

> A person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

Chapman v. Klemick, 3 F.3d 1508, 1509-10 (11th Cir. 1993) (citing 29 U.S.C. § 1002(21)(A)); see also Pegram v. Herdrich, 530 U.S. 211, 223 (2000); Mertens v. Hewitt Assocs., 508 U.S. 248, 252

(1993). "The term 'fiduciary' has a broader meaning under ERISA than at common law because ERISA defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan." Hunt v. Hawthorne Assocs. Inc., 119 F.3d 888, 892 n.2 (11th Cir. 1997)(quoting Mertens, 508 U.S. at 262)(internal quotations omitted). Thus, any person who exercises discretionary authority or control respecting the management or the disposition of the plan at issue can be held liable if he or she breaches any of the responsibilities, obligations, or duties imposed by ERISA. 29 U.S.C. § 1109(a).

Penchansky asserts that the "mere fact that he was employed by a purported ERISA fiduciary does not, without more establish the employee's fiduciary status to support a claim under ERISA." (Doc. #139, p. 7.) However, plaintiffs allege more than just the mere fact that Penchansky was employed by TGG. Plaintiffs allege that TGG designed, developed, and marketed plaintiffs' pension plan. (Id. at ¶¶ 10-11.) Additionally, TGG was engaged as the initial administrator of the Plan that had several material flaws such that it violated the IRC and IRS regulations. (Id. at ¶¶ 86-88.) Further, plaintiffs allege that while employed by TGG, Penchansky, acting on behalf of TGG, had specific fiduciary responsibilities for plan administration and/or actually provided discretionary administrative tasks. (Doc. #117, ¶¶ 6, 15.) Since, at the motion to dismiss stage, the Court must assume the truth of plaintiffs' factual allegations, the Court finds that plaintiffs

have sufficiently pled that Penchansky may have had a fiduciary duty to the Plan within the scope of his employment at TGG. If Penchansky, while employed at TGG, did exercise discretionary authority or control with respect to plaintiffs' pension plan, as plaintiffs' allege, a fiduciary relationship between Penchansky and the plaintiffs would exist.

Accordingly, it is now

**ORDERED:**

Defendant Joseph Penchansky's Motion to Dismiss Second Amended Complaint (Doc. #139) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this   29th   day of April, 2010.

*/s/ John E. Steele*
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record