UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EHLEN FLOOR COVERING, INC., a
Florida corporation, EDWARD EHLEN,
THOMAS EHLEN, FRANCIS EHLEN, and
DOLORES EHLEN, individuals, and
EHLEN FLOOR COVERINGS RETIREMENT
PLAN,

                    Plaintiffs,

vs.                                    Case No.  2:07-cv-666-FtM-29DNF

JEFFREY LAMB, individually, BRIAN
YOUNGS, individually, THOMAS
WANDERON, individually, LWY
ASSOCIATES, INC., formerly known as
Tax Accounting and Financial
Associates, Inc., INDEPENDENT
ADVISORS OF FLORIDA, INC., formerly
known as Foundation Asset
Management, Inc., THE GRADUATE
GROUP, INC., a Florida corporation,
PACIFIC LIFE INSURANCE COMPANY, a
Nebraska corporation, INNOVATIVE
PENSION STRATEGIES, INC., and JOSEPH
PENCHANSKY,

                    Defendants.
_____


**OPINION AND ORDER**

     This matter comes before the Court on Defendant Innovative

Pension Strategies, Inc's (IPS) Motion to Compel Arbitration and

Stay Plaintiffs' Claims Against It and Incorporated Memorandum of

Law (Doc. #145) filed on October 9, 2009.  Plaintiffs filed a

Response (Doc. #153) on November 9, 2009.

**I.**

Some of the plaintiffs originally filed a Complaint (Doc. #2) in state court asserting twelve state-law claims.  This Complaint was removed by defendants to federal court on the basis of federal question jurisdiction.  In an Opinion and Order (Doc. #58) filed on September 3, 2008, the undersigned denied plaintiffs' motion to remand the case to state court.  The Court found that all twelve counts were preempted by the Employee Retirement Income Security Act of 1974 (ERISA), dismissed the state law claims, and permitted plaintiffs to file an amended complaint setting forth claims under ERISA.  In due course, plaintiffs filed a four-count Second Amended Complaint.  (Doc. #117.)  The Second Amended Complaint named additional plaintiffs, added IPS as a defendant to the ERISA claim (Count I), and named IPS as the sole defendant in three alternative state law claims (Counts II, III, IV).

The record reflects that on or about December 20, 2002, Ehlen Floor Covering, Inc. (Ehlen Floor) submitted a New Client Information Sheet to, and entered into a written Administrative Services Agreement (the Agreement) with, IPS relating to Ehlen Floor's ERISA plan.  (Doc. #145, pp. 14-18.)  The New Client Information Sheet was signed by Edward Ehlen as President, and the Administrative Services Agreement was signed by Edward Ehlen on behalf of Ehlen Floor.  (Id.)  The Agreement included an Addendum entitled "Professional Services Binding Alternative Dispute

Resolution (ADR) Arbitration Agreement - AAA" (the Arbitration Addendum).  (Id. at 18.)

IPS argues that the Arbitration Addendum requires the Court to compel arbitration by all plaintiffs as to all their claims against IPS.  Plaintiffs do not dispute that there is a binding arbitration agreement, but argue that only Ehlen Floor signed the Agreement and therefore only Ehlen Floor can be bound by the Arbitration Addendum.  Ehlen Floor also argues that its claims in this case do not fall within the scope of the Arbitration Addendum.  Both issues are to be determined by the court.  Granite Rock Co. v. Int'l Bhd. of Teamsters, No. 08-1214, 2010 WL 2518518 at *7 (U.S. June 24, 2010); Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs., 553 F.3d 1351, 1366 (11th Cir. 2008); Int'l Underwriters AG & Liberty Re-Insurance Corp., S.A. v. Triple I: Int'l Invs., Inc., 533 F.3d 1342, 1344 (11th Cir. 2008).

## II.

As both sides agree, the arbitration agreement in this case is governed by the Federal Arbitration Act (FAA).  9 U.S.C. § 1 *et seq*.  The Supreme Court has stated that "arbitration is strictly a matter of consent," Granite Rock Co., 2010 WL 2518518 at *8 n.6, which is the first principle that has underscored all of its arbitration decisions.  Id. at *8.  See also, Becker v. Davis, 491 F.3d 1292, 1298 (11th Cir. 2007)("A party cannot be forced to arbitrate any dispute that the party has not agreed to submit to

arbitration.")  Thus, "[t]he FAA reflects the fundamental principle that arbitration is a matter of contract."  <u>Rent-A-Center, West, Inc. v. Jackson</u>, No. 09-497, 2010 WL 2471058 at *3 (U.S. June 21, 2010).  Section 2 of the FAA provides:

> "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2.  The Arbitration Addendum in this case provides:

> It is understood and agreed that any claim arising out of the rendition or lack of rendition of services under this Agreement including claims of malpractice, will be determined by submission to final and binding arbitration, and not be a lawsuit or resort to court process, except as provided by law for judicial review or enforcement of arbitration proceedings.  This includes any claims that any professional services rendered under this contract were unnecessary, unauthorized or improperly, negligently, or incompetently rendered.

(Doc. #145, p. 18.)

## A.  Who Is Bound By Arbitration Agreement:

### (1) Ehlen Floor

As stated above, the parties agree that the Agreement was signed by Edward Ehlen on behalf of Ehlen Floor.  Thus, it is undisputed that Ehlen Floor and IPS are parties to an agreement containing an arbitration clause, and plaintiff Ehlen Floor is therefore bound by the Arbitration Addendum.

**(2) Individual Plaintiffs**

Edward Ehlen, Francis Ehlen, and Thomas Ehlen (the Ehlens) are ERISA-plan participants and, unlike Ehlen Floor, are not signatories to the Agreement with IPS.  Plaintiffs argue that since none of the individual plaintiffs signed the Agreement, they have not consented to arbitration of their individual claims against IPS and therefore cannot be compelled to arbitrate these claims.  IPS argues that even though these plaintiffs are not signatories to the agreement, their individual claims all essentially assert a breach of IPS's duties under the Agreement, and thus are subject to arbitration under equitable estoppel principles.  (Doc. #145, p. 4.)

The Supreme Court has held that arbitration may be compelled by or against non-signatories to an arbitration agreement if traditional principles of state law would allow the contract to be enforced by or against the non-signatories.  Arthur Andersen LLP v. Carlisle, 129 S. Ct. 1896, 1901-03 (2009).  Such "traditional principles" include "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel."  Id. at 1902.  Under Florida law, "[n]on-signatories may be bound by an arbitration agreement if dictated by ordinary principles of contract law and agency," Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, Inc., 778 So. 2d 1090 (Fla. 4th DCA 2001), or by equitable estoppel principles. BDO Seidman, LLP v. Bee, 970 So. 2d 869, 874-75 (Fla. 4th DCA 2008).

"A party may not rely on a contract to establish his claims while avoiding his obligation under the contract to arbitrate such claims." BDO Seidman, 970 So. 2d at 875 (citing Blinco v. Green Tree Servicing LLC, 400 F.3d 1308, 1312 (11th Cir. 2005)). Thus, "if a party relies on the terms of a written agreement in asserting the party's claims, that party is equitably estopped from then seeking to avoid an arbitration clause within the agreement." Becker, 491 F.3d at 1300. See also MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999); Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir. 1993); McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., Inc., 741 F.2d 342 (11th Cir. 1984). An issue raised as a defense, however, is not attributable to the non-party in determining whether the non-party may be compelled to arbitrate. Granite Rock Co., 2010 WL 2518518 at *13. Accordingly, the Court must focus on the nature of the individual claims against IPS to determine whether the claims fall within the scope of the Arbitration Addendum. Becker, 491 F.3d at 1300.

The Second Amended Complaint alleges that in late 2002, at the recommendation of other defendants, Ehlen Floor and the Ehlens agreed to establish a 412(i)[1] pension plan. (Doc. #2, ¶¶ 18-20.)[2]

---

[1] A 412(i) plan is a defined benefit retirement plan governed by Internal Revenue Code § 412(i).

[2] The Second Amended Complaint incorporates various paragraphs
(continued...)

Ehlen Floor's ERISA plan (the Plan) was designed by Pacific Life Insurance Company (Pacific Life) and The Graduate Group, Inc. (TGG). (Id. at ¶ 25.)  As noted above, Ehlen Floor and IPS entered into the Agreement on December 20, 2002.  The Agreement specifically provides that IPS is "to provide administrative services" and "perform certain administrative services in connection with the Plan(s)," and that "the particular services to be performed are indicated in Section VI, 'Election of Services'".  (Doc. #145, p. 16.)  The Agreement submitted to the Court does not contain a Section VI. (See Doc. #145, pp. 15-18.)  Thus, there were no specific administrative services IPS agreed to provide pursuant to the Agreement.

The Second Amended Complaint alleges, without specifically mentioning the Agreement, that IPS assumed responsibility for administering the Plan in 2003, "including the benefit calculations for Plan participants, annual reporting requirements, and the receipt and allocation of funds into the respective contracts within the Plan." (Doc. #2, ¶ 26.)  Thereafter, "after assuming control over the administration of the Plan," IPS discovered several material flaws in the initial design of the Plan which could result in adverse tax consequences.  (Id. at ¶ 27.)  IPS arranged to have Ehlen Floor amend the Plan to comply with IRS regulations, and

---

[2](...continued)
from the original Complaint.

delivered the proposed amendments to TGG so TGG could arrange for their adoption by Ehlen Floor.  (Id. at ¶¶ 29-30.)

IPS then administered the Plan on the assumption the proposed amendments had been adopted.  (Id. at ¶ 30.)  Plaintiffs have been unable to locate records showing adoption of the amendments, and the IRS does not acknowledge that the amendments were ever made.  (Id.)

In early 2004, the IRS promulgated guidelines indicating that a 412(i) plan, such as Ehlen Floor's unamended Plan, was improper and was subject to reporting requirements and substantial penalties and sanctions by the IRS.  (Id. at ¶ 32.)  IPS determined that the Ehlen Floor Plan would likely be viewed as such a plan, and thus IPS prepared another amendment to decrease the chances of the IRS taking such a view.  (Id. at ¶ 33.)  IPS arranged to have the Plan amended, although plaintiffs were not informed of the reason or the potential IRS issue.  (Id. at ¶ 35.)

In March, 2006, the IRS notified Ehlen Floor that it was auditing the Plan for the year 2003.  Throughout the course of the audit, the IRS has taken the position that the Plan violated various provisions of the Internal Revenue Code (IRC).  (Id. at ¶¶ 40-41.)

Count I of the Second Amended Complaint is against all defendants, including IPS, and alleges a breach of fiduciary duty, engaging in self dealing, and knowing, enabling, or failing to remedy other defendants' breaches of fiduciary duty, in violation of ERISA.  Plaintiffs allege that "IPS had specific fiduciary

responsibilities for plan administration and/or actually provided discretionary administrative tasks." (Doc. #117, ¶ 15.) Plaintiffs further allege that "TGG was originally designated to be the third party administrator of the Plan, after which it delegated its role to IPS, whose ongoing administrative functions created a de facto fiduciary relationship." (Doc. #117, ¶ 15.) Plaintiffs also allege that IPS "failed to carry out their required administrative responsibilities, including obtaining Plan modifications necessary to comply with IRS requirements," and that "TGG's responsibilities in relation to the Plan were delegated, at least in part, to IPS." (Id. at ¶ 18.)

Counts II-IV are only against IPS, and are pled in the alternative to Count I. Count II alleges negligence against IPS, asserting that after it assumed responsibility for administering the Plan IPS failed to have the Plan amendments executed, failed to retain necessary records, improperly administered the Plan under amendments that were not adopted or otherwise approved by Ehlen Floor, and failed to render proper advice and services, all contrary to IPS's duty to do so. Count III alleges a violation of Florida's Deceptive and Unfair Trade Practices Act, asserting that IPS acted in an unfair and deceptive manner in the course of its administration and implementation of the Plan by failing to disclose certain matters to plaintiffs. Count IV asserts a claim for misrepresentation against IPS, asserting that its conduct during the

relevant period amounted to actual or implied false representations.

### (i) Count I: ERISA Violation

In Count I, the individual plaintiffs allege a breach of fiduciary duty claim against IPS (and all other defendants) pursuant to 29 U.S.C. § 1132(a)(2). "To establish liability for a breach of fiduciary duty under any of the provisions of ERISA § 502(a), a plaintiff must first show that the defendant is in fact a fiduciary with respect to the plan." Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1277 (11th Cir. 2005). Under ERISA:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

11 U.S.C. § 1002(21)(A). "Significantly, under this definition, a party is a fiduciary only 'to the extent' that it performs a fiduciary function. As such, fiduciary status under ERISA is not an 'all-or-nothing concept,' and 'a court must ask whether a person is a fiduciary with respect to the particular activity at issue.'" Cotton, 402 F.3d at 1277. A claims administrator may or may not be a fiduciary, depending on whether the administrator has the authority to make ultimate decisions. Blue Cross & Blue Shield v.

Sanders, 138 F.3d 1347, 1353 n.4 (11th Cir. 1998); Baker v. Big Star Div. of Grand Union Co., 893 F.2d 288, 290 (11th Cir. 1989).

The individual plaintiffs are not relying upon the terms of the Agreement or attempting to hold IPS to those terms in asserting their individual claim in Count I. The Agreement did not require IPS to provide any specific administrative services. From the record provided to the Court, whatever services were provided by IPS were not pursuant to this vague contract. "Under California law,[3] a contract will be enforced if it is sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached. . . . Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable." Bustamante v. Intuit, Inc., 141 Cal. App. 4th 199, 209 (Cal. App. 6th Dist. 2006) (internal citations omitted). Thus, "if . . . a supposed 'contract' does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract." Id. While IPS did provide

_____

[3]The 'contract' contains a choice of law provision specifying that it "shall be construed and enforced in accordance with the laws of the State of California." (Doc. #145, p. 17.) Generally Florida courts are required to enforce choice-of-law provisions. See Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co., 761 So. 2d 306, 311-12 (Fla. 2000).

administrative services, the Second Amended Complaint alleges these were by virtue of delegation from TGG, and there is no evidence to the contrary.  Therefore, equitable estoppel principles do not support an order compelling to non-signatories to arbitrate the ERISA claim.

### (ii) Alternative Counts

For similar reasons, the Court finds that the individual plaintiffs do not sufficiently rely upon the Agreement in the alternative counts to justify compelling arbitration of those claims.  Since the Agreement does not provide for any particular services, it cannot provide a basis for these counts and therefore cannot provide support for the equitable estoppel argument.

### B.  Scope of Arbitration Addendum:

Ehlen Floor concedes being subject to the Arbitration Addendum, but argues that its disputes with IPS are not within the scope of that provision.  As noted above, the provision states:

> It is understood and agreed that any claim arising out of the rendition or lack of rendition of services under this Agreement including claims of malpractice, will be determined by submission to final and binding arbitration, and not be a lawsuit or resort to court process, except as provided by law for judicial review or enforcement of arbitration proceedings.  This includes any claims that any professional services rendered under this contract were unnecessary, unauthorized or improperly, negligently, or incompetently rendered.

(Doc. #145, p. 17.)  Since the Agreement does not specify any particular services to be performed, the claims clearly do not arise "out of the rendition or lack of rendition of services under this

Agreement." (Id.)(emphasis added). Therefore, Ehlen Floor's claims
are not bound by the Arbitration Addendum.

Accordingly, it is now

**ORDERED:**

Defendant Innovative Pension Strategies, Inc's Motion to Compel
Arbitration and Stay Plaintiffs' Claims Against It (Doc. #145) is
**DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this ___14th___ day of
July, 2010.

_____
JOHN E. STEELE
United States District Judge


Copies:
Counsel of record