EHLEN FLOOR COVERING, INC., a
Florida corporation, EDWARD EHLEN,
an individual, THOMAS EHLEN, an
individual,

                    Plaintiffs,

vs.                                    Case No.  2:07-cv-666-FtM-29DNF

JEFFREY LAMB, individually, BRIAN
YOUNGS, individually, THOMAS
WANDERON, individually, LWY
ASSOCIATES, INC., formerly known as
Tax Accounting and Financial
Associates, Inc., INDEPENDENT
ADVISORS OF FLORIDA, INC., formerly
known as Foundation Asset
Management, Inc., THE GRADUATE
GROUP, INC., a Florida corporation,
PACIFIC LIFE INSURANCE COMPANY, a
Nebraska corporation, INNOVATIVE
PENSION STRATEGIES, INC., EUGENE
GORDON, individually and JOSEPH
PENCHANSKY, individually

                    Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on three motions for
summary judgment: (1) Pacific Life Insurance Company's Amended
Dispositive Motion for Summary Judgment and Incorporated Memorandum
of Law (Doc. #210; Doc. #279); (2) Defendant Innovative Pension
Strategies, Inc's Motion for Summary Judgment (Doc. #236; Doc.
#280); and (3) Defendants The Graduate Group, Inc., Eugene Gordon,
and Joseph Penchansky's Motion for Summary Judgment and Supporting

Memorandum of Law (Doc. #237).[1]  Plaintiffs filed Responses. (Docs. ## 224; 253-255, 281-282.)  Both parties filed affidavits, depositions, and other exhibits in support of their respective briefs.[2]

## I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010).  A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S.

---

[1]Defendants Brian Youngs, LWY Associates, Inc. and Independent Advisors of Florida, Inc. did not file motions for summary judgment.

[2]This matter was previously stayed pending appeal to the Eleventh Circuit Court of Appeals.  On December 1, 2011, the Eleventh Circuit issued as mandate a Judgement (Doc. #274) affirming the Court's July 14, 2010, Opinion and Order (Doc. #201) denying Innovative Pension Strategies, Inc's Motion to Compel Arbitration and Stay Plaintiffs' Claims Against It.  On December 7, 2011, the stay was lifted.  (Doc. #275.)

317, 323 (1986); <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1259-60 (11th Cir. 2004). To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322; <u>Hilburn v. Murata Elecs. N. Am., Inc.</u>, 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007); <u>Tana v. Dantanna's</u>, 611 F.3d 767, 772 (11th Cir. 2010).

## II.

The Court dismissed plaintiffs' original twelve-count complaint (Doc. #2) in an Opinion and Order (Doc. #58) which found plaintiffs' claims were preempted by the Employee Retirement Income Security Act of 1974 (ERISA). Plaintiffs then filed a four-count Second Amended Complaint (the Second Amended Complaint) on June 30, 2009.[3] (Doc. #117.) Count I of the Second Amended Complaint

---

[3]The Second Amended Complaint incorporates by reference a majority of the factual allegations included in the original Complaint. (<u>See</u> Doc. #117, ¶¶1, 13.) It also adds IPS, Eugene Gordon and Joseph Penchansky as defendants and Francis and Delores Ehlen as plaintiffs. On March 12, 2010, Dolores Ehlen was voluntarily dismissed without prejudice. (<u>See</u> Doc. #172.)

alleges a breach of fiduciary duty by all defendants for failing to carry out their responsibilities required by ERISA § 502, 29 U.S.C. § 1132, engaging in self dealing, and knowingly participating and/or concealing known acts and omissions by their co-defendants in connection with their dealings with the Ehlen Floor Coverings Retirement Plan.  Specifically, plaintiffs allege that Pacific Life, TGG and IPS failed to carry out their administrative responsibilities, including obtaining Plan modifications necessary to comply with IRS requirements.  Counts II through IV are alleged as alternative counts against IPS only[4] for state law claims of negligence (Count II), violation of Florida's Deceptive and Unfair Trade Practices Act (Count III), and misrepresentation (Count IV).

Plaintiffs Edward and Thomas Ehlen are officers, directors, and employees of plaintiff Ehlen Floor Coverings, Inc. (Ehlen Floor) (collectively plaintiffs).  Prior to the implementation of the 412(i) plan at issue in this case, defendant Thomas Wanderon (Wanderon) served as Edward Ehlen's personal accountant and as Ehlen Floor's business accountant.  Sometime in the late 1990s, defendant Jeffery Lamb (Lamb) succeeded Wanderon as Edward Ehlen's personal accountant and Ehlen Floor's business accountant.  Lamb introduced Ehlen Floor to defendant Brian Youngs (Youngs), who worked as Ehlen Floor's financial advisor.  Wanderon supervises defendants Lamb and Youngs, and all three are principals of

---

[4] See (Doc. #117, p.6, n.3.)

defendants LWY Associates, Inc. f/k/a/ Tax, Accounting and Financial Associates, Inc. (TAFA) and its wholly owned subsidiary, Independent Advisors of Florida, Inc. f/k/a Financial Asset Management (FAM). Both TAFA and FAM are jointly owned by Wanderon, Lamb, and Youngs.

In or about 2000, Ehlen Floor began looking at alternatives to its Welfare Benefit Plan because its deductions were no longer tax deductible. Lamb, together with Youngs, recommended that Ehlen Floor implement a 412(I)[5] plan proposal (the Plan)[6] for its employees with an effective date of January 1, 2002. After Ehlen Floor, Lamb, and Youngs came to the conclusion that Ehlen Floor should implement a 412(I) plan, Youngs contacted a Pacific Life Insurance Company representative because Youngs was not very familiar with the implementation of 412(I) plans.

---

[5]A 412(i) plan is an employer-sponsored defined benefit plan that provides retirement and death benefits to its participants. It was previously governed by Internal Revenue Code (IRC) § 412(i), but the Pension Protection Act of 2006, 120 Stat. 780, 820-26 (2006) amended section 412 of the IRC. It renumbered § 412(i) as § 412(e)(3) but left the language unaltered. The plans, however, remain commonly referred to as 412(i) plans. To create a 412(i) plan, an employer establishes a trust to hold the plan's assets and the trust uses tax deductible employer contributions to purchase and maintain life insurance and/or annuity policies for the plan. See 26 U.S.C. § 401(a)(2006); 26 CFR § 1.412(i)-1(b)(2)(i)(2006). The plans are subject to certain rules, including the "100 Times Rule," the "Less Than 50% Rule," and a prohibition on "springing cash values."

[6]Ehlen Floor Coverings Retirement Plan, the plan at issue in this matter, is also a plaintiff in this case. ERISA § 502(d), 29 U.S.C. § 1132(d), provides that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity."

Defendant Pacific Life Insurance Company (Pacific Life) develops and markets insurance policies and annuities specifically for the purpose of funding 412(I) plans. The policies and annuities that funded the Plan were part of a package called Flex XII and Quest II (the Products). Pacific Life maintains that it does not market 412(I) plans themselves; plaintiffs, Lamb, Wanderon, and Youngs assert that Pacific Life marketed these products specifically for the use in 412(I) plans, and repeatedly assured customers that the Products were legal for use in these types of plans. Additionally, Pacific Life produced an opinion letter which stated that its Products would more likely than not comply with IRS regulations. (Doc. #224, pp. 8-9.)

In order to incorporate Pacific Life's products into a 412(I) Plan, Pacific Life required a client to engage a third party administrator. Pacific Life created an internal list of contacts that were approved third party administrators. (Doc. #255, p.4.) Defendants The Graduate Group (TGG) and Innovative Pension Strategies, Inc. (IPS) were among the providers on Pacific Life's internal third party administrator list.

TGG is a company that assists insurance brokers in marketing insurance products, including those for use in 412(I) plans. Defendant Eugene Gordon (Gordon) is the primary owner of TGG. (Doc. #117, ¶5.) Defendant Joseph Penchansky (Penchansky) was an employee of TGG during the relevant time period. (Id. at ¶6.)

Both Gordon and Penchansky acted on behalf of TGG with regards to the Plan (Id. at ¶¶ 5-6), but neither Gordon nor Penchansky ever directly communicated with Ehlen Floor.

Youngs engaged TGG to prepare and design the pension proposal, which Youngs and Lamb then presented to Ehlen Floor. (Doc. #237, p. 5.) TGG created the initial plan design, including selecting the Pacific Life products and allocating the contributions in the Plan. Youngs asserts that he relied on TGG regarding the products and contribution amounts because he was unfamiliar with 412(I) plans. Youngs was the agent of record for the sale of the Pacific Life Products, and received 90% of the commissions. Gordon received 10% of the commissions as compensation for assisting Youngs in the sale of the Products to Ehlen Floor. (Doc. #237, p. 7.) Penchansky, working as an independent contractor with TGG, prepared the owner's report to the Plan. (Doc. #239, p. 9.) While no TGG representatives ever had any direct contact with Ehlen Floor, most of the communication regarding the Plan went through TGG. It is disputed whether TGG requested that all communications regarding the Ehlen Floor Plan go through it.

In 2003, after TGG created the initial plan design, IPS began providing administrative services to the Plan. (Doc. #255, p. 4.) TGG, through Youngs, presented Ehlen Floor with an Administrative Services Agreement with IPS (the Agreement) for the provision of certain services related to the Plan. (Id. at p. 5.) Ehlen Floor

and IPS entered into the Agreement on December 20, 2002. The Agreement specifically provides that IPS is "to provide administrative services" and "perform certain administrative services in connection with the Plan(s)," and that "the particular services to be performed are indicated in Section VI, Election of Services". The Agreement submitted to the Court does not contain a Section VI.

IPS prepared the Plan Document and Summary Plan Description which Ehlen Floor approved on December 20, 2002. (Doc. #2, ¶ 25; Doc. #210-3, p.11.) The Plan identifies the "named fiduciaries" as Ehlen Floor (employer and Plan Administrator), Edward Ehlen (Trustee), and "any investment manager appointed hereunder." (Doc. #237, Exh. H, pp. 51-52.) The Plan defines an "Investment Manager":

> 1.27 "Investment Manager" means an entity that (a) has the power to manage, acquire, or dispose of Plan assets and (b) acknowledges fiduciary responsibility to the Plan in writing. Such entity must be a person, firm, or corporation registered as an investment advisor under the Investment Advisors Act of 1940, a bank or an insurance company.

(Id. at Exh. H, p. 6.)

In or about February 2003, IPS began administering the Plan it discovered what it perceived to be plan flaws in the initial plan design which could result in adverse tax consequences. (Doc. #237-12, pp. 40-41.) IPS prepared amendments to the Plan to cure these perceived defects. IPS arranged to have Ehlen Floor amend the Plan

to comply with IRS regulations, and it asserts that it delivered the proposed amendments to TGG for adoption on February 10, 2003. (<u>Id.</u>; Doc. #210-4, p.2.)

In February 2004, the IRS promulgated new guidelines indicating that a 412(I) plan with a beneficiary payout limitation would be classified as a listed transaction subject to reporting requirements and substantial penalties and sanctions. These new guidelines were applicable to the Plan. No penalties or sanctions have ever been assessed against any plaintiff or the Plan.

Pacific Life did not immediately notify TGG or plaintiffs of the new IRS guidelines nor of any action needed to conform with the IRS reporting requirements.[7] Subsequently in or about March or April 2004, Pacific Life sent an industry-wide letter stating that the new guidelines may impact its products for use in 412(I) plans. (Doc. #2, p. 11; Doc.#225-25, p.34.) After discussions with TGG, IPS, and others, Pacific Life agreed to revise the premium amounts and calculated appropriate changes to the Products. (<u>Id.</u>) When Youngs learned of the new rulings he asserts he called Penchansky at TGG, who assured him that the Plan was "a plain vanilla plan" and there was nothing to worry about. (Doc. #257, p. 45.)

After IPS learned of the new guidelines, it prepared additional amendments to the Plan so that the Plan would conform to

---

[7]Specifically, plaintiffs were never informed of the need to file IRS Form 8886 for every listed transaction.

the new IRS guidelines. IPS asserts that it gave the Plan amendments to TGG so that TGG could pass them along to Ehlen Floor. TGG asserts that it would never in the normal course of business receive amendments to a plan, and did not receive these particular amendments to the Plan at issue. (Doc. #256, pp. 28-29.)

Plaintiffs were neither aware that the amendments were to cure defects in the Plan, nor that the Plan was flawed. Employees of IPS asserted that they were under the impression that all communication regarding the Plan was supposed to go through TGG. Thus, when amendments for the Plan were prepared and sent to TGG, they believed they were adopted. IPS, believing the amendments were adopted, continued to provide administrative services to the Plan. However, the proposed amendments to the Plan were never implemented.

In 2005, the IRS offered Ehlen Floor a settlement with respect to its pension plan. Lamb and Youngs consulted with TGG and informed plaintiffs that the Plan conformed with IRS regulations, and that plaintiffs did not need to accept the settlement offer. Plaintiffs relied on the advice of Lamb and Youngs and rejected the settlement offer. (Doc. #2, ¶¶ 37-38.)

In a letter dated March 6, 2006, the IRS notified Ehlen Floor that the Plan had been selected for audit for the year 2003. Throughout the course of the audit the IRS has taken the position that the plan violates various provisions of the Internal Revenue

Code (IRC).  (Id. at ¶¶ 40-41.)  As noted above, no sanctions have yet resulted from the audit.

## III.

The Court will first address IPS's contention that the state law claims in Counts II-IV of the Second Amended Complaint (Doc. #117) are preempted by ERISA.  Because these counts are preempted, they will be dismissed.

29 U.S.C. § 1144(a) provides "the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." "ERISA preemption is not a gateway but a barrier to state law causes of action, the effect of which is to completely displace state law claims."  Amos v. Blue Cross-Blue Shield, 868 F.2d 430, 431 (11th Cir. 1989)(per curiam).  Displaced state law claims include claims for common law causes of action such as breach of contract and negligent misrepresentation.  Id.

The Eleventh Circuit has adopted the complete preemption test as set forth in Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004).  Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1345 (11th Cir. 2009).  Under Davila, a claim is completely preempted, regardless of the merits of the claim, if: (1) the claim could have been brought under ERISA § 504 (a); and (2) no other legal duty supports the plaintiff's claim.  Id.

The first part of the inquiry is satisfied, "if two requirements are met: (1) the plaintiff's claim must fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA." Id. at 1350 (citing Davila, 542 U.S. at 211-12). As the Court has previously found (Doc. #58), the plaintiffs' claims clearly fall within the scope of ERISA and they have standing to sue under ERISA. There is no dispute that the Plan at issue in this case is a pension plan covered by ERISA. Further, there is no dispute that plaintiffs are beneficiaries of the Plan who have standing to sue. See 29 U.S.C. § 1002(8).

The second part of the inquiry is whether plaintiffs' claims are predicated on a legal duty that is independent of ERISA. Connecticut State Dental Ass'n, 591 F.3d at 1353. Plaintiffs' claims relate to either the administration of the Plan or IPS' failure to disclose certain information. Specifically, each count alleges that after IPS discovered flaws in the Plan and attempted to amend the Plan, it never verified those amendments were implemented. Additionally each count alleges that IPS failed to disclose to plaintiffs that the plan was flawed. These claims clearly relate to duties imposed on an ERISA fiduciary, rather than duties IPS had independent of ERISA. See Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985); see also LaRue, 552 U.S. 248 (2008)(finding that "the principal statutory duties imposed on

fiduciaries by [29 U.S.C. § 1109] relate to the proper management, administration and investment of fund assets . . . .").

Thus, the Court finds that Counts II-IV are completely preempted by ERISA's civil enforcement provision as they either relate to the administration of the plan or to a breach of an alleged fiduciary duty. IPS's motion to dismiss, insofar as it seeks to dismiss Counts II and IV of the Second Amended Complaint, is granted.

**IV.**

In their summary judgment motions, Pacific Life, Lamb, Wanderon, IPS, Gordon, Penchansky, and TGG, all argue that they were not fiduciaries to the Plan, and thus cannot be held liable for breach of fiduciary duty. Plaintiffs argue that defendants were "functional fiduciaries" who exercised control over the Plan.

The threshold question when determining whether there was a breach of fiduciary duty is whether the defendant is a "fiduciary." Pegram v. Herdrich, 530 U.S. 211, 226 (2000). "The question whether a party is an ERISA fiduciary is a mixed question of law and fact." Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1277 (11th Cir. 2005). "The term 'fiduciary' has a broader meaning under ERISA than at common law because ERISA defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan." Hunt v. Hawthorne Assocs. Inc., 119 F.3d 888, 892 n.2 (11th Cir. 1997)(quoting Mertens v.

Hewitt Assocs., 508 U.S. 248, 262 (1993)(internal quotations omitted).  Thus, fiduciaries can either be named fiduciaries or a "functional" fiduciary.  Since there is no dispute that these defendants are not named as fiduciaries in the Plan (see docs. ## 224, p. 13; 253, p. 9; 254, p. 10; 255, p. 10), the Court need only address whether there is undisputed material evidence as to whether each moving defendant is a "functional" fiduciary to the Plan.

Section 29 U.S.C. § 1002(21)(A) provides defines "fiduciary" in relevant part:

> [A] person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

Chapman v. Klemick, 3 F.3d 1508, 1509-10 (11th Cir. 1993) (citing 29 U.S.C. § 1002(21)(A)); see also Pegram v. Herdrich, 530 U.S. 211, 223 (2000); Mertens v. Hewitt Assocs., 508 U.S. 248, 252 (1993).  Accordingly, "a party is a fiduciary only to the extent that it performs a fiduciary function.  As such, fiduciary status under ERISA is not an all-or-nothing concept, and a court must ask whether a person is a fiduciary with respect to the particular activity at issue."  Cotton, 402 F.3d at 1277 (internal quotations omitted); Pegram, 530 U.S. at 226.  In this case, the particular

activities at issue are: the initial design of the Plan; the failure to implement amendments that may have prevented the Plan from being in violation of the IRS guidelines; and the repeated assurances that the Plan conformed with IRS guidelines.

## A. Pacific Life

Pacific Life maintains that it was not a fiduciary to the Plan, and that any involvement with the Plan was limited to the issuance of life insurance policies and annuity contracts. Pacific Life relies heavily on the disclosures and disclaimers signed by plaintiffs. (Doc. #210.) Plaintiffs claim that Pacific Life is a functional fiduciary because it actively created, marketed, and evaluated compliance for the Products, specifically for use with 412(I) plans, and then when it learned there might be issues with the Plan did not retract its opinion letter, but only sent a vague warning and devised a formula to amend the Products for the Plan that were never implemented. Plaintiffs argue that since determining fiduciary status is a question of mixed law and fact, there is a genuine issue of material fact regarding whether Pacific Life is an ERISA fiduciary with respect to the Plan. (Doc. #224, p. 3.)

"Simply urging the purchase of its products does not make an insurance company an ERISA fiduciary with respect to those products." <u>Cotton</u>, 402 F.3d at 1278 (citing <u>Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y</u>,

841 F.2d 658, 664 (5th Cir. 1988)).  Even taking the facts in the light most favorable to plaintiffs, they merely allege that Pacific Life should be liable as a fiduciary because it actively marketed and endorsed their products to fund 412(I) plans like the Plan at issue.  Their marketing material and opinion letter regarding the Products continually couches Pacific Life's assurances in caveats that the Products must be tailored to each client.  (<u>See</u> Doc. #225-21.)  Further, Pacific Life ensures that clients engage a third party administrator in order to administer plans based on that client's particular needs.  Cases holding that insurers like Pacific Life are not ERISA fiduciaries are numerous.  <u>See</u> <u>Cotton</u>, 402 F.3d at 1278 (collecting cases).  The Court finds that Pacific Life was not an ERISA fiduciary and thus could not have breached a fiduciary duty.

Plaintiffs assert this case is akin to <u>Rapides Reg. Med. Ctr.</u> <u>v. Am. United Life Ins. Co.</u>, 938 F. Supp. 380, 389 (W.D. La. 1996), where a Louisiana District Court granted summary judgment finding an insurer to be a fiduciary under ERISA because it had the authority to amend the insurance contract, which was a plan asset. <u>Id.</u>  Even if Pacific Life specialized in creating products for 412(I) plans, this does not elevate their status to a fiduciary for every plan their products funded.  Plaintiffs have presented no evidence that Pacific Life had the authority to amend plaintiffs' particular Plan assets, but only that Pacific Life gave generalized

advice to third party administrators, which included revised premium amounts for their products to comply with the new IRS guidelines. Unlike <u>Rapides Reg. Med. Ctr.</u>, where the insurer had the authority to amend the contract and alter its value, Pacific Life merely created the Products that funded the Plan.

Plaintiffs also have a claim against all defendants for co-fiduciary liability. However, since the Court has found that Pacific Life was not a fiduciary, it cannot be liable for another fiduciary's breach. <u>See</u> <u>Useden v. Acker</u>, 947 F.2d 1563, 1581 (11th Cir. 1991)(holding that no claim for damages under ERISA can be sustained against a non-fiduciary for participation in a fiduciary breach)). Summary judgment will be granted as to Pacific Life.

**B. Thomas Wanderon**

Plaintiffs assert that Wanderon should be held liable because he is a functional fiduciary by supervising Lamb and Youngs, who provided investment advice for a fee pursuant to 29 U.S.C. § 1002(21)(A)(ii). Wanderon asserts that there is no evidence that he provided investment advice for a fee or that he was a functional fiduciary in any other capacity.

Prior to the implementation of the Plan, Wanderon served as Edward Ehlen's personal and business accountant. (Doc. #234, p. 11.) Wanderon is a principal in both TAFA and FAM, along with Youngs and Lamb. In or around the late 1990s, Lamb took over as the Ehlen's accountant. (<u>Id.</u>) Plaintiffs admit that they had very

little dealings with Wanderon after Lamb took over as their accountant. (Id.) However, they argue that because Wanderon is a principal in TAFA and FAM he indirectly rendered investment advice for a fee.

One can be a functional fiduciary if "he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, . . ." 29 U.S.C. § 1002(21)(A)(ii). As the regulations state,

> (1) A person shall be deemed to be rendering "investment advice" . . . only if:
>
> (i) Such person renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property; and
>
> (ii) Such person either *directly or indirectly* (e.g., through or together with any affiliate)--
>
>> (A) Has discretionary authority or control, whether or not pursuant to agreement, arrangement or understanding, with respect to purchasing or selling securities or other property for the plan; or
>>
>> (B) Renders any advice described in paragraph (c)(1)(I) of this section on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall

> portfolio composition, or diversification of
> plan investments.

29 CFR § 2510.3-21(c)(1)(emphasis added). Thus, any individual who regularly gives the plan investment advice for a fee, pursuant to either written or oral agreement, such that he or she has discretionary authority or control over the plan or that the advice is the primary basis for plan investments - is a functional fiduciary. There is no evidence that Wanderon was in any way involved with the Plan such that he, directly or indirectly, had discretionary authority or control with respect to the Plan or regularly gave investment advice that served as the primary basis for investment decisions.

Additionally, the instant case is distinguishable from <u>Reich v. Lancaster</u>, 843 F. Supp. 194 (N.D. Tex. 1993) and <u>Daniels v. Nat'l Emp. Benefit Servs., Inc.</u>, 858 F. Supp. 684 (N.D. Ohio 1994). Here, Wanderon had nothing to do with the Plan and had ceased working as Ehlen Floor's accountant several years prior to the Plan's implementation. Further, there is no evidence that Wanderon was using either TAMA or FAM in a "shell-game-like maneuver" such that he was essentially TAMA or FAM's alter ego. Since there is no evidence that Wanderon was involved in any way with the Plan, the Court will grant summary judgement for Wanderon as to Count I.

## C. Jeffery Lamb

Lamb served as the Ehlen's personal and business accountant after succeeding Wanderon. (Doc. #234, p. 14.) Lamb discussed

with Ehlen Floor the possibility of implementing a 412(I) plan. (<u>Id.</u> at p. 15.) Based upon these discussions, Ehlen Floor implemented the Plan. (<u>Id.</u>) Plaintiffs argue that Lamb should be considered a functional fiduciary because he provided investment advice for a fee to the plan, and that Lamb breached his fiduciary duty to the Plan by rendering improper advice to the Ehlens regarding the design, implementation and administration of the Plan as well as failing to properly advise them regarding the 2005 IRS settlement proposal. (<u>Id.</u>)

Lamb admits that together with Youngs, he served in an intermediary capacity between plaintiffs and Pacific Life, IPS, and TGG for the Plan, but asserts that he relied on those "experts" to provide investment advice. Lamb asserts that he never had discretionary authority or control with regards to the Plan and that at best, the record establishes that he may have provided professional account advice to Ehlen Floor.

As stated above, however, one can be a functional fiduciary of the Plan by "render[ing] advice to the plan as to the value of securities or other property, or mak[ing] recommendation[s] as to the advisability of investing in, purchasing, or selling securities or other property . . . on a regular basis . . . that such services will serve as a primary basis for investment decisions with respect to plan assets." 29 CFR § 2510.3-21(c)(1). This functional fiduciary relationship can be pursuant to "mutual agreement,

arrangement or understanding, written or otherwise . . ." Lamb admits that he may have provided suggestions and recommendations to plaintiffs as Ehlen Floor's accountant. Further, it appears that plaintiffs believed that there was an understanding that they were relying totally on Lamb and Youngs to provide advice regarding the Plan assets. (See Doc. #237-2, pp. 17-21.) These facts preclude summary judgment, which will be denied as to Count I.

**D.  IPS**

Plaintiffs argue that IPS detected flaws in the Plan, created amendments to the Plan, and then did not verify that those amendments were implemented. Thus, IPS acted as a fiduciary under the plan by "usurping decision making control and authority over the management and disposition of the Plan's assets." (Doc. #255, p. 3.) IPS argues that it was a third party administrator and its actions with respect to the Plan were purely ministerial. (Doc. #236, p. 10.) When IPS became aware of potential tax issues with the Pacific Life funded plans it expressed those concerns to TGG with the understanding that TGG would convey those concerns to the plan sponsor. IPS provided TGG with suggested amendments to the Plan under the assumption that those amendments would be implemented. Additionally, IPS argues that its contract with Ehlen Floor specifically provided that it was a third party administrator and it acted as such. (Doc. #236, p. 10.)

The Court notes that "[a] person should not be attributed fiduciary status under ERISA and held accountable for performance of the strict responsibilities required of him in that role, if he is not clearly aware of his status as a fiduciary: . . ." ITPE Pension Fund v. Hall, 334 F.3d 1011, 1015 (11th Cir. 2003). In the instant case, there was an Agreement specifically asserting that IPS was not a fiduciary. (Doc. #237-10, p. 2.) However, disclaimers such as the one in the Agreement are not dispositive. See 29 U.S.C. § 1110(a).

Further, material facts regarding the extent of IPS's role in administering the Plan are in dispute. The Agreement does not specify which administrative services that IPS was to provide. IPS asserts that it was not involved in the initial design of the Plan nor was it ever in direct communication with plaintiffs, thus it could not have been a fiduciary. Additionally, when IPS noticed there were issues with the Plan, it communicated those issues to TGG who was to communicate those issues to the necessary parties. (Doc. #236, p. 13.) However, the factual record shows that no one communicated the Plan issues to the necessary parties and it is disputed whose responsibility it was to implement Plan amendments. Thus, whether IPS had any discretionary authority or discretionary responsibility in the administration of such plan is a disputed issue of fact. The Court denies IPS's motion for summary judgment.

### E.  TGG Defendants

Eugene Gordon, Joseph Penchansky and TGG (together the TGG Defendants) assert that they had no authority or control over the Plan management or the Plan assets, let alone discretionary authority.  (Doc. #237, p. 14.)  Plaintiffs argue that the TGG Defendants' administrative functions created a functional fiduciary relationship.  Plaintiffs argue that TGG recommended and created the pension plan proposal which plaintiffs accepted.  TGG allegedly told IPS that the Plan did not need testing as it had already been tested and had no IRS compliance issues.  Additionally, plaintiffs assert that after finding the flaws in the Plan, IPS created and delivered amendments to TGG for adoption and implementation.  IPS claims that TGG required all communication regarding the Plan to run through it.  However, neither plaintiffs nor their financial advisors received the Plan amendments from TGG for implementation.  Plaintiffs argue that this course of conduct constituted a "usurpation of the Plaintiffs' authority and control over management of the Plan and disposition of assets."  (Doc. #254, p. 12.)  Since there are clearly disputed material facts regarding the TGG Defendants' role in the design and implementation of the Plan as well as whether the TGG Defendants were further required to implement any amendments proposed by IPS, the Court will deny summary judgement as to the TGG defendants.

Accordingly, it is now

**ORDERED:**

1.  Defendant Innovative Pension Strategies, Inc.'s Motion for Summary Judgment (Doc. #236) is **GRANTED IN PART AND DENIED IN PART.**

>   a.  The motion to dismiss Counts II through IV of the Second Amended Complaint is **GRANTED** and these counts are **DISMISSED WITH PREJUDICE.**
>
>   b.  The motion to dismiss Count I is **DENIED.**

2.  Pacific Life Insurance Company's Amended Dispositive Motion for Summary Judgment (Doc. #210) is **GRANTED.** The Clerk shall withhold the entry of Judgment until further Order by the Court.

3.  Defendants' Jeffrey Lamb and Thomas Wanderon, Motion for Final Summary Judgment (Doc. #234) is **GRANTED** as to Thomas Wanderon and **DENIED** as to Jeffrey Lamb. The Clerk shall withhold the entry of Judgment until further Order by the Court.

4.  Defendants The Graduate Group, Inc., Eugene Gordon, and Joseph Penchansky's Motion for Summary Judgment and Supporting Memorandum of Law (Doc. #237) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __17th__ day of April, 2012.

_John E. Steele_
JOHN E. STEELE
United States District Judge

Copies: Counsel of record