UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EHLEN FLOOR COVERING, INC., a
Florida corporation, EDWARD EHLEN,
an individual, THOMAS EHLEN, an
individual, FRANCIS EHLEN, EHLEN
FLOOR COVERINGS RETIREMENT PLAN,

Plaintiffs,

vs.                                   Case No.  2:07-cv-666-FtM-29DNF

JEFFREY LAMB, individually, BRIAN
YOUNGS, individually, THOMAS
WANDERON, individually, LWY
ASSOCIATES, INC., formerly known as
Tax Accounting and Financial
Associates, Inc., INDEPENDENT
ADVISORS OF FLORIDA, INC., formerly
known as Foundation Asset
Management, Inc., THE GRADUATE
GROUP, INC., a Florida corporation,
PACIFIC LIFE INSURANCE COMPANY, a
Nebraska corporation, INNOVATIVE
PENSION STRATEGIES, INC., a
California corporation, EUGENE
GORDON, individually, and JOSEPH
PENCHANSKY,

Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court on Defendant Innovative

Pension Strategies, Inc.'s (IPS) Partial Motion for Summary

Judgment on Damages (Doc. #338) filed on July 20, 2012. Defendants

Independent Advisors of Florida, Inc., LWY Associates, Inc.,

Jeffrey Lambs, Eugene Gordon, Joseph Penchansky, and the Graduate

Group join in the motion. (Docs. ##339, 342). On August 16, 2012,

plaintiffs Edward Ehlen, Francis Ehlen, Thomas Ehlen, Ehlen Floor

Covering, Inc. (Ehlen Floor), and the Ehlen Floor Coverings Retirement Plan (the Plan)(collectively plaintiffs) filed a Memorandum in Response. (Doc. #349.)   In this Memorandum, plaintiffs renewed their previous motions for remand and abstention (Doc. #27), reconsideration (Doc. #59), and application for a certificate of appealability (Doc. #73), and alternatively seek leave to file an amended complaint. On August 20, 2012, the Court issued an Order (Doc. #350) directing plaintiffs to file a response to the merits of defendants' partial motion for summary judgment and directing defendants  to respond to the merits of plaintiffs' renewed motions.  (Doc. #350).  Responses were filed by all parties.  (Docs. ## 354-357, 362-363.)  The Court heard oral argument on November 7, 2012.

Defendants essentially argue that the Employee Retirement Income Security Act of 1974 ("ERISA") preempts all of plaintiffs' claims in this case, but that the remedies sought by plaintiffs are not available under ERISA.  Plaintiffs respond, as they have repeatedly, that this is not and never has been an ERISA case and has no business being in federal court.  Some brief factual background and the procedural history is necessary to place the current issues in context.

## I.

In or around 2000, Ehlen Floor began looking at alternatives to its Welfare Benefit Plan because its contributions were no

longer tax deductible.  Ehlen Floor ultimately decided to implement
a 412(I)[1] plan (the Plan) which became effective on January 1,
2002.  In or around 2003, when IPS began providing administrative
services to the Plan, it discovered what it perceived as flaws in
the initial plan design which could result in adverse tax
consequences.  IPS prepared amendments to the Plan to cure these
defects, but the amendments were not adopted.  The parties dispute
who bears responsibility and ultimate fault for this failure.

In or about February 2004, the IRS promulgated new guidelines
indicating that a 412(I) plan with a beneficiary payout limitation
would be classified as a listed transaction subjected to reporting
requirements and substantial penalties and sanctions.  The Rule
required that any plans that could be considered a listed
transaction file a Form 8886 to avoid potential penalties.  These
new guidelines were applicable to the Plan.  IPS drafted amendments
to the Plan so it would conform with the new IRS guidelines, but
these amendments were not adopted by the Plan.  Ehlen Floor asserts

_____

[1]A 412(i) plan is an employer-sponsored defined benefit plan that
provides retirement and death benefits to its participants.  It was
previously governed by Internal Revenue Code (IRC) § 412(i), but
the Pension Protection Act of 2006, 120 Stat. 780, 820-26 (2006)
renumbered § 412(i) as § 412(e)(3) but left the language unaltered.
The plans, however, remain commonly referred to as 412(i) plans.
     To create a 412(i) plan, an employer establishes a trust to
hold the plan's assets and the trust uses tax deductible employer
contributions to purchase and maintain life insurance and/or
annuity policies for the plan.  See 26 U.S.C. § 401(a)(2006); 26 CFR
§ 1.412(i)-1(b)(2)(i)(2006).   The plans are subject to certain
rules, including the "100 Times Rule," the "Less Than 50% Rule,"
and a prohibition on springing cash values.

it was never informed about the initial Plan flaws, the existence of the new rule, the requirement of filing a Form 8886, or the drafting of the proposed amendments to the Plan.

In a letter dated March 6, 2006, the IRS notified Ehlen Floor that the Plan had been selected for audit for the year 2003. The IRS audited Ehlen Floor and eventually assessed substantial taxes, penalties, and interest against Ehlen Floor, Edward Ehlen, and Thomas Ehlen, as well as non-parties Stephanie Ehlen and Nancy Ehlen. The Plan was not assessed taxes, penalties, or interest, and there is no evidence of any damages by Francis Ehlen. After lengthy negotiations, in April, 2012, Ehlen Floor, Edward, Thomas, Stephanie, and Nancy Ehlen entered into a Closing Agreement with the IRS agreeing to pay specified amounts. (Doc. #324-1.)

## II.

Five years ago, this case started as a Complaint filed in state court asserting twelve state law claims "arising out of and in connection with Defendants' professional negligence, fraudulent misrepresentations, negligent misrepresentations, negligent supervision, breaches of fiduciary duties and deceptive and unfair trade practices in creating, administering, amending and providing services related to a 412(I) defined benefit pension plan for Ehlen Floor." (Doc. #2, ¶1.) Among other things, plaintiffs Edward Ehlen and Thomas Ehlen alleged they were officers, directors and employees of Ehlen Floor. (Doc. #2, ¶¶3, 4.)

The case was removed to federal court by defendant Pacific Life Insurance Company (Pacific Life) on the basis that the Complaint "asserts claims falling within the scope of the exclusive civil enforcement provisions of the Employee Retirement Income Security Act of 1974 ("ERISA")" and asserted questions arising under federal law. (Doc. #1, ¶3.) The Notice of Removal asserted that employees of the Plan, including Edward and Thomas Ehlen, were ERISA plan participants. (Doc. #1, ¶4(d).)

Plaintiffs filed a motion to remand the case to state court, asserting that the Court lacked subject matter jurisdiction because (1) the state law claims were not encompassed within ERISA's exclusive civil enforcement provisions and therefore were not completely preempted by ERISA (Doc. #27, ¶5), and (2) there was no substantial question of federal law stated on the face of the Complaint. (Id. at ¶6.) Plaintiffs asserted they were "not seeking to recover any plan benefits due under an ERISA plan, to enforce any rights under an ERISA plan or to otherwise clarify any rights to future benefits under an ERISA plan." (Id. at ¶6.) Plaintiffs further asserted they were not seeking equitable relief under ERISA, but rather were seeking monetary damages. (Id. at p. 15.)

The District Court concluded that all counts of the Complaint were completely preempted by ERISA (Doc. #58.) The District Court found, among other things, that there was an ERISA plan; that

Edward and Thomas Ehlen were entitled to benefits under the plan and therefore had standing to sue; that all parties were ERISA entities; and that plaintiffs sought relief akin to that available under 29 U.S.C. § 1132(a). The Court dismissed the Complaint, but allowed an amended complaint to be filed so long as the claims were re-characterized as claims under ERISA. (Id.)

Plaintiffs filed a Motion for Reconsideration, asserting in part that the relief they sought "solely relates to the recovery of monetary damages for the loss of IRS tax deductions and IRS imposed sanctions and penalties," which are "damages that are expressly precluded by ERISA." (Doc. #59, ¶3.) The district court denied this portion of the motion for reconsideration. (Doc. #72.)

Plaintiffs filed an Amended Complaint (Doc. #88) setting forth a single count which re-characterized their claim as one for breach of fiduciary duty under ERISA. In due course, plaintiffs filed a Second Amended Complaint (Doc. #117) which added IPS as a defendant, included the re-characterized ERISA claim, and added state law claims against IPS. The Second Amended Complaint is the operative pleading.

The District Court thereafter denied IPS's motion to compel arbitration, and an appeal was taken to the Eleventh Circuit. Plaintiffs filed a cross-appeal disputing federal jurisdiction based on ERISA preemption. In Ehlen Floor Covering, Inc. v. Lamb,

-6-

660 F.3d 1283 (11th Cir. 2011), the Court addressed plaintiffs'

jurisdictional argument as follows:

> Plaintiffs argue that their claims against IPS concern the design and repair of the Plan, not IPS's ERISA-regulated duties such as management and administration of the Plan. It is true that some of plaintiffs' assertions do not fall under the umbrella of ERISA, but their allegations of breach of fiduciary duties and failure to make required disclosures are clearly potential claims under 29 U.S.C. § 1109(a), thus fulfilling prong one. The second inquiry is satisfied because Ehlen Floor and the Ehlens have standing under ERISA § 502(a)(2) as fiduciary and Plan participants, respectively.

> Step two of Davila[, 542 U.S. 200 (2004)] looks to whether the plaintiffs' claims implicate a duty independent of ERISA. In Davila, the Supreme Court found that although respondents' claim asserted a breach of duty under the Texas Health Care Liability Act (THCLA), the "interpretation of the terms" of the benefit plan "form[ed] an essential part of their THCLA claim," such that there was no independent claim to defeat preemption. 542 U.S. at 213, 124 S. Ct. at 2498. Similarly, in Borrero v. United Healthcare of N.Y., Inc., appellants argued that their contractual duties were defined by state law, but this court found that even though the appellants' assertion was "true in the abstract," "the content of the claims necessarily require[d] the court to inquire into aspects of the ERISA plans because of the invocation of terms defined under the plans." 610 F.3d 1296, 1304 (11th Cir. 2010). This court held that if some of a party's claims "implicate legal duties dependent on the interpretation of an ERISA plan," the claims are completely preempted. Id. at 1304-5.

> Plaintiffs here assert that IPS failed to disclose information related to the Plan—an ERISA violation—and abrogated its fiduciary obligations, which arise from the relationship established by the Plan and IPS's duties under ERISA. Like the claims in Borrero, the "legal duty implicated is dependent upon an ERISA plan." Id. at 1304. Because there is federal question jurisdiction over these claims, supplemental jurisdiction provides us with subject matter jurisdiction over the remaining claims. See id. at 1304-05.

Ehlen Floor Covering, 660 F.3d at 1287-88.  The Eleventh Circuit also upheld the order denying the motion to compel arbitration.

After remand, the District Court dismissed the alternative state law claims against IPS contained in the Second Amended Complaint (Counts II-IV) as being preempted by ERISA (Doc. #316, pp. 11-13), granted summary judgment in favor of Pacific Life and Thomas Wanderon on the ERISA claim (Id. at 13-19), and denied summary judgment as to the other defendants (Id. at 19-23.)  Among other things, the Court found it undisputed that Edward and Thomas Ehlen were officers, directors and employees of Ehlen Floor (Id. at p. 4.)

Count I of the Second Amended Complaint sets forth the sole ERISA claim in the case.  It alleges that the remaining defendants breached their fiduciary duty to the Plan and its participants. More specifically, it alleges that defendants violated the standard of care prescribed by 29 U.S.C. § 1104(a), giving rise to causes of action pursuant to § 1132, including § 1132(a)(2) "requiring Defendants to make good to one or more Plaintiff(s) all losses resulting from Defendants' breach of fiduciary duty and to provide other equitable and remedial relief."  (Doc. #117, ¶23.) Additionally, pursuant to 29 U.S.C. § 1132(a)(3)(a) and (b), plaintiffs seek to enjoin defendants' violations of ERISA and to obtain appropriate equitable relief to redress such violations or

to enforce any provisions of ERISA or the terms of the Plan.  (Id.)
In the "Wherefore" clause, plaintiffs ask for a judgment

> requiring Defendants to make good to the Plan, the
> Participants and Ehlen Floor all losses to the Plan, the
> Participants and Ehlen Floor resulting from Defendants'
> breach of fiduciary duty, enjoin any violations of ERISA,
> provide other equitable or remedial relief as the Court
> may deem appropriate, award attorneys fees and costs
> pursuant to ERISA Section 502(g) (29 U.S.C. § 1132(g))
> and any further relief that the Court deems appropriate
> and just.

(Doc. #117, p. 6.)

The parties' first Joint Final Pre-Trial Statement (Doc. #267) stated that plaintiffs' damages had not been definitively established, but estimated damages in excess of $1.5 million (Doc. #300, pp. 12-13.)  Defendants objected to any evidence regarding any IRS penalty as damages, and stated that "the IRS has not imposed any tax assessment or penalties against the Plaintiffs". (Doc. #267, p. 12, n.1.)  Based on this, the Court directed that the parties be prepared to discuss at the upcoming pretrial conference whether there was a case and controversy within the meaning of Article III of the United States Constitution.  (Doc. #293.)

In a second Joint Pre-Trial Statement (Doc. #300), plaintiffs continued to object to the compelled re-characterization of their claims as ERISA claims.  Plaintiffs stated that the

> Second Amended Complaint alleges violations of ERISA by
> the Defendants as ERISA fiduciaries and ERISA functional
> fiduciaries in failing to discharge their duties with
> care, skill and prudence under the circumstances,

> engaging in actions prohibited by ERISA such as self-dealing, and knowingly participating and/or concealing known acts and omissions of ERISA by their co-defendants and co-fiduciaries in connection with their dealings with the Ehlen Floor Coverings Retirement Plan. Defendants all had discretionary authority, control, or responsibility with respect to the Ehlen Plan or its assets or usurped such functions and acted as functional ERISA fiduciaries with regard to the Ehlen Plan.

(Doc. #300, p. 3.)   Plaintiffs asserted that they suffered $617,413.00 in damages, which was the amount paid to the IRS for taxes, penalties, assessments, interest, and fines; plus $284,695.81 in attorney fees and related costs in connection with representation and negotiations with the IRS for the audit and the liability and penalty phases of the audit.   (Id. at 12.) Defendants objected to any evidence regarding damages because plaintiffs had not produced evidence that the IRS had imposed, or that plaintiffs had paid, a tax assessment or penalty.   (Id. at 12 n.1.)   Plaintiffs' counsel represented at the pretrial conference that plaintiffs had entered into a binding Closing Agreement with the IRS.   The Court ordered the Closing Agreement with the IRS to be filed, and issued a Final Pre-Trial Order (Doc. #315) which adopted the second Joint Pre-Trial Statement.

    In a subsequent Unopposed Motion (Doc. #317), defendants sought to continue the trial and to re-open and compel discovery. Defendants stated in part that, "[t]hroughout this lawsuit, the Defendants have maintained that Plaintiffs' purported damages are speculative, and thus the causes of action premature, because the

IRS has not imposed a tax penalty against any Plaintiffs and Plaintiffs have not paid the any [sic] alleged penalties to the IRS." (Doc. #317, p. 2.) Defendants pointed out that the filed copy of the Closing Agreement (Doc. #324) had not been executed by the IRS, and so "Defendants continue to question whether there is a case or controversy under Article III of the United States Constitution." (Doc. #317, p. 6.) The Court granted the motion (Doc. #319), continued the trial and allowed certain additional discovery related to the issue of damages. (Doc. #327.)

The Court then issued an Opinion and Order (Doc. #330) granting defendants' motions to strike the demand for a jury trial. Plaintiffs had asserted that they had a right to a jury trial for a breach of fiduciary duty claim under § 502(a)(2), 29 U.S.C. § 1132(a)(2). The Court noted that the relief sought in the Second Amended Complaint was under both § 502(a)(2) and §§ 502(a)(3)(A) and (B). (Doc. #330, pp. 3-4.) Finding no Eleventh Circuit precedent resolving the right to a jury trial under § 502(a)(2), the Court found that a cause of action for breach of fiduciary duty was historically within the jurisdiction of the equity courts, and that the nature of the remedy sought in this case sounded in equity. The Court further found that plaintiffs sought to have defendants reimburse them or the Plan for additional taxes, penalties and interest paid to the IRS as a result of the alleged breach of fiduciary duty, which essentially sought restitution,

typically an equitable remedy.  The Court concluded "that neither the nature of the issues encompassed by plaintiffs' claims nor the overall nature of the relief sought are legal in nature, and therefore finds that plaintiffs are not entitled to trial by jury." (Doc. #330, pp. 5-6.)

Thereafter, defendants moved for leave to file a partial motion for summary judgment (Doc. #333) as to damages, and leave was granted by the Court. (Doc. #335).  In their current partial summary judgment motion, defendants seek partial summary judgment on the basis that while the claims are preempted by ERISA, the damages sought by plaintiffs are not recoverable under ERISA. Alternatively, defendants assert that Thomas Ehlen is not entitled to any damages because he was never a "participant" under the Plan within the meaning of ERISA, and that Edward Ehlen is not entitled to any damages for the year 2003 because he was not a "participant" under the Plan within the meaning of ERISA for that year.[2]  In response, plaintiffs seek to renew their prior motions[3] challenging the subject matter jurisdiction of the Court.  Alternatively,

---

[2]Defendants have seemingly dropped their arguments with respect to whether there is an Article III case in controversy in this matter. The Court notes that to date, plaintiffs have not filed a copy of a closing agreement than has been executed by the IRS.  Defendants assert, however, that plaintiffs produced a "fully executed Closing Agreement" on April 27, 2012.  (Doc. #338, p. 3.)

[3]Motion for remand and abstention (Doc. #27), motion for reconsideration (Doc. #59), and motion for application for certificate of appealability (Doc. #73).

plaintiffs seek leave to file a third amended complaint alleging additional breaches of fiduciary duty.

## III.

Because subject matter jurisdiction is always the first order of business, the Court will first address the plaintiffs' request to renew their previous motions that challenge jurisdiction. These motions essentially assert that this case was improperly removed to Federal Court, that plaintiffs' claims are not preempted by ERISA, and therefore the Court lacks subject matter jurisdiction and the case should be remanded to state court. Defendants respond that the Eleventh Circuit has already ruled on the issue of subject matter jurisdiction, and the District Court has no basis to change that decision.

The Eleventh Circuit has already determined that complete preemption under ERISA gave the District Court subject matter jurisdiction over plaintiffs' claims in the original Complaint. Ehlen Floor Covering, Inc. v. Lamb, 660 F.3d 1283 (11th Cir. 2011). This, however, does not forever determine the issue of subject matter jurisdiction. See 28 U.S.C. § 1447(c)("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.") There has, however, been no intervening change of fact or law that warrants revisiting or revising the Eleventh Circuit's resolution of this issue.

The availability of the remedy plaintiffs seek does not impact the issue of whether this case was properly removed and remains properly in federal court.  As the Eleventh Circuit has held,

> Nor is the argument that ERISA provides an inadequate remedy a sufficient reason to overcome the application of § 1144(a). The question of preemption is a matter of congressional intent; it is not a question of which body of law-state or federal-offers more protection to an aggrieved party.  Phillips v. Amoco Oil Co., 799 F.2d 1464, 1470 (11th Cir. 1986) ("To argue that Congress created a 'gap' in the law does not undermine the reasoning on which a finding of preemption is based.").

First Nat. Life Ins. Co. v. Sunshine-Jr. Food Stores, Inc., 960 F.2d 1546, 1550 (11th Cir. 1992). See also Farr v. U.S. West Commc'ns, Inc., 151 F.3d 908 (9th Cir. 1998).  Similarly, a prayer for relief which includes relief not available under ERISA does not preclude ERISA preemption.

> Although an ERISA beneficiary cannot obtain punitive damages in an action for benefits, the prayer for punitive damages does not take [the plaintiff's] claim out of the scope of § 1132(a). If it did, any plaintiff could thwart Congress's intent to completely preempt claims arising out of the denial of ERISA benefits by artful pleading. See Blackburn v. Sundstrand Corp., 115 F.3d 493, 495 (7th Cir. 1997) (complete preemption is not defeated by a plaintiff's effort to craft a claim under state law via artful pleading); see also Schmeling v. NORDAM, 97 F.3d 1336, 1343 (10th Cir. 1996) (complete preemption applies even if federal remedies are not identical to the remedies available under the preempted state law cause of action).

Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1354 n.11 (11th Cir. 1998).  ERISA can preempt state law causes of actions even though the state law claim provides greater remedies than does ERISA, Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990), and

even though ERISA would provide no remedies.  Great-West Life &
Annuity Ins. Co. v. Knudson, 534 U.S. 204, 220-21 (2002).  Because
subject matter jurisdiction continues to exist in this case,
independent of what relief is available to plaintiffs, plaintiffs'
requests to reconsider subject matter jurisdiction are denied.

**IV.**

The Court next addresses whether plaintiffs Thomas and Edward
have standing as "participants"[4] in the ERISA Plan.  All parties
pled, and the District Court and Eleventh Circuit found, that
Thomas and Edward Ehlen were participants in the ERISA Plan.  The
parties now agree that neither was a participant within the precise
terms of the Plan at certain times, but disagree on the legal
impact of the new factual information.

The parties agree that the Plan provides that an employee must
have one year of service, defined by the Plan as a period of twelve
consecutive months with at least 1,000 hours of service, to be an
eligible participant under the Plan.  (See §1.16 of the Plan, Doc.
#338-1, p. 10.)  The Plan further provides that years of service
with an Affiliated Employer must be recognized, but employees of
Affiliated Employers are not "eligible to participate in [the] Plan
unless such Affiliated Employers have specifically adopted this

---

[4]A "participant" is defined under ERISA as "any employee or former
employee of any employer . . . who is or may become eligible to
receive a benefit of any type from an employee benefit plan which
covers employees of such employer . . ." 29 U.S.c. § 1002(7).

Plan in writing." (Id.)  It is undisputed that both Edward and
Thomas Ehlen worked for Island Installations, an Ehlen Floor
Affiliated Employer[5], in 2002, and for Ehlen Floor Coverings in
2003.  Edward Ehlen continued his employment with Ehlen Floor
Coverings from 2004 through 2006.  Thomas Ehlen, on the other hand,
worked for Ehlen Construction Management, another Affiliated
Employer, from 2004 through 2005.  It is undisputed that neither
Island Installations nor Ehlen Construction Management adopted the
Plan in writing.  (Doc. #354, pp. 3-4.)  Plaintiffs concede that

> Ed Ehlen would not have met the technical requirements to
> be a 'plan participant' for plan year 2003 because he did
> not have twelve (12) consecutive months of service or a
> contemporaneous written document from his prior
> affiliated employer adopting the Ehlen Plan or otherwise
> giving him credit for employment with such affiliated
> entity. Further, Thomas Ehlen would not have met the
> technical requirements to be a 'plan participant' at any
> time at issue because he was not an employee of Ehlen
> Floor and there was no contemporaneous written adoption
> of the Ehlen Plan by his affiliated entity employer.

(Id.)  Nonetheless, both Thomas and Edward Ehlen actually
participated in the Plan, and were treated as participants until
the recent discovery of their actual status.

Defendants assert that the lack of "participant" status means
these plaintiffs lack standing under ERISA, and summary judgment
must be granted against Thomas Ehlen on all claims and against
Edward Ehlen on the 2003 claims, even if other aspects of the

---

[5]An Affiliated Employer is defined by the Plan in Section 1.5.
(See Doc. #338-1, p. 8.)

partial summary judgment motion are denied.  Plaintiffs, while
conceding that Thomas and Edward have "not met the technical
requirements to be a 'plan participant'" (Doc. #354, pp. 3-4),
assert that they were treated as participants of the Plan by Ehlen
Floor, which intended and believed them to be plan participants,
and were treated as "de facto plan participants" by the IRS. (Doc.
#354, pp. 4-5.) Plaintiffs argue that Thomas and Edward "are plan
participants for ERISA preemption purposes as a result of treatment
by Ehlen Floor Covering, Inc. and the IRS, or they were never
properly plan participants as a result of Defendants' errors and
omissions in plan formation, eligibility determinations and
adoption, in which case, their remedies and claims fall outside
ERISA and should be remanded to state court." (Doc. #354, p. 6.)
At oral argument, plaintiffs' counsel asserted that "they are not
participants," and therefore Thomas and Edward Ehlen have only
state law claims but no ERISA claim.

Under the unique facts of this case, the Court finds that
Thomas and Edward Ehlen have standing to pursue their ERISA claims
even though neither was technically a Plan "participant."   In
Willett v. Blue Cross and Blue Shield of Alabama, 953 F.2d 1335,
1342 (11th Cir. 1992), the employee plaintiffs were eligible for
benefits under an ERISA plan but were never actually enrolled in
the plan because their employer failed to pay the premiums.  The
Eleventh Circuit noted that the plaintiff would have been entitled

-17-

to coverage had the premiums been paid, and therefore the employee was a plan participant.  The Court noted that the two requirements for establishing status as a plan participant are that the employee "be in, or reasonably expect to be in, covered employment" and that he "'be or become' eligible to receive a plan benefit." <u>Willett</u>, 953 F.3d at 1342.  Thus, in <u>Kibold v. Aetna U.S. Healthcare, Inc.</u>, 258 F. Supp. 2d 1317 (M.D. Fla. 2003) the Court found that a plaintiff "does not need to establish a contractual entitlement to benefits," and that, "[i]t is nonsensical that an employee who, but for a fiduciary's failure to process his application, would be eligible for benefits, should be precluded from asserting the rights he would have under ERISA had the application been processed."

The Court concludes that Edward and Thomas Ehlen, as well as Ehlen Flooring and the Plan, reasonably expected Edward and Thomas to be in covered employment through their work with the Affiliated Employers, and that each was treated as a participant despite technical shortcomings. According to plaintiffs, Edward and Thomas Ehlen would have been participants in the Plan but for the alleged failure of a fiduciary to adopt the Plan in writing on behalf of their Affiliated Employers. Both actually participated in the Plan at all relevant times, and were penalized as participants by the IRS.  The Court finds that Edward and Thomas each has standing in

this case.  Defendants' motion for partial summary judgment on this ground is denied.

V.

Defendants also seek partial summary judgment that plaintiffs' requested relief - recovery of the taxes, penalties, assessments, and interest imposed by the IRS and associated attorney fees - is not recoverable under ERISA.  While defendants are new to the position that such items are not recoverable under ERISA, it has long been the position of plaintiffs that such monetary relief is not available under ERISA (although plaintiffs coupled this position with the erroneous argument that this precluded ERISA preemption).  No Supreme Court or Eleventh Circuit case has found that the taxes, assessments, penalties, and interest sought by plaintiffs are not recoverable under ERISA.

ERISA identifies "six carefully integrated civil enforcement provisions".  Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985), citing 29 U.S.C. § 1132(a).  Two of these are alleged in the Second Amended Complaint.  The issue is whether the tax-related monetary relief sought by plaintiffs in this case may be recovered under either provision.

## A.  29 U.S.C. § 1132(a)(2)

A civil action may be brought by "the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."  29 U.S.C. § 1132(a)(2).  This

-19-

> authorizes the Secretary of Labor as well as plan
> participants, beneficiaries, and fiduciaries, to bring
> actions on behalf of a plan to recover for violations of
> the obligations defined in § 409(a) [§1109(a)]. The
> principal statutory duties imposed on fiduciaries by that
> section relate to the proper management, administration,
> and investment of fund assets, with an eye toward
> ensuring that the benefits authorized by the plan are
> ultimately paid to participants and beneficiaries.

LaRue v. DeWolff, Boberg & Assoc., Inc., 552 U.S. 248, 253 (2008)(internal citations and punctuation omitted).

Two Supreme Court cases illustrate where the line has been drawn for § 1132(a)(2). In Russell, the plaintiff received all of the benefits to which she was contractually entitled, but sought consequential damages arising from a delay in the processing of her benefits claim. In holding that § 1132(a)(2) did not provide a remedy for this type of injury, the Supreme Court stressed that the text of § 1109(a) characterizes the relevant fiduciary relationship as one "with respect to a plan," and repeatedly identified the "plan" as the victim of any fiduciary breach and the recipient of any relief. The Supreme Court held that a participant in a defined benefit plan could not bring suit under § 1132(a)(2) to recover consequential damages to the participant arising from delay in the processing of her claim.

In LaRue, a Plan participant directed a fiduciary to make certain changes to the investments in his individual defined contribution account pension plan, but the fiduciary failed to do so. The participant sued the fiduciary to "make whole" his

resulting monetary losses.  Making a distinction between the defined benefit plan in Russell and the defined contribution plan in LaRue, the Supreme Court found that the misconduct "falls squarely within" the category covered by § 1132(a)(2).  LaRue, 552 U.S. at 253.  LaRue stated that

> [m]isconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan . . . We therefore hold that although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account.

Id. at 255-256.

The Ehlen Floor Plan was a defined benefit plan, and therefore generally governed by Russell.  Plaintiffs may sue in a representative capacity for the Plan, but may only recover damages to the Plan, not to themselves individually.  Here, there is no evidence that the Plan actually incurred any tax-related damages. While plaintiffs seek the recovery of imposed taxes and penalties, the Closing Agreement with the IRS demonstrates that the only parties in this case who were actually assessed and paid anything to the IRS are Ehlen Floor Covering, Inc., Thomas Ehlen and Edward Ehlen.  Therefore, the only damages sought under this provision of ERISA are individual damages, which do not fall within the scope of 29 U.S.C. § 1132(a)(2).

Although plaintiffs did not specifically assert that the alleged misconduct "creates or enhances the risk of default by the entire plan," as required by LaRue, 552 U.S. at 255, at oral argument counsel for the defendants informed the Court that the Plan has been "unwound." It is unclear to the Court whether the reason the Plan was "unwound" was due to a "risk of default by the entire plan" or for some other purpose. Accordingly, the Court is without sufficient undisputed material facts to conclusively determine that the plaintiffs may not pursue relief pursuant to 29 U.S.C. § 1132(a)(2).

**B.   29 U.S.C. § 1132(a)(3)**

Additionally, a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3). Under the plain language of § 1132(a)(3), "the relief sought must be equitable in nature, and the claim for relief must be predicated on either a violation of ERISA or the enforcement of a plan provision or an ERISA provision." Green v. Holland, 480 F.3d 1216, 1224 (11th Cir. 2007).

The Supreme Court has interpreted the term "appropriate equitable relief" in § 502(a)(3) as "referring to those categories

-22-

of relief that, traditionally speaking (i.e., prior to the merger of law and equity) were typically available in equity." CIGNA Corp. v. Amara, 131 S.Ct. 1866, 1878 (2011)(internal citations and quotation marks omitted).  This does not mean that whatever relief a court of equity is empowered to provide is "equitable relief," since in a given case that could include legal remedies otherwise beyond the scope of an equity court's authority. Mertens v. Hewitt Assoc., 508 U.S. 248, 257-58 (1993).  Rather, the term "equitable relief" in § 502(a)(3) refers to "those categories of relief that were *typically* available in equity . . ." Mertens, 508 U.S. at 256 (emphasis in original).  Whether a remedy is "legal or equitable depends on the basis for [the plaintiff's] claim and the nature of the underlying remedies sought." Knudson, 534 U.S. at 213.

Mertens found that beneficiaries' claim seeking money damages against a non-fiduciary was nothing more than a claim for compensatory damages, which was, traditionally speaking, legal and not equitable in nature.  Such relief was therefore beyond the scope of § 1123(a)(3).

In Knudson, an ERISA plan fiduciary sued a plan beneficiary for monetary reimbursement from funds the beneficiary received from a third party pursuant to tort litigation for medical outlays the plan had previously made on the beneficiary's behalf.  The Supreme Court found that none of the requested relief was typically available in equity.  The fiduciary sought to obtain an injunction

-23-

against non-reimbursement of the money pursuant to the terms of the plan, but the Supreme Court held that an injunction to compel payment of money past due under a contract or specific performance of past due monetary obligations were not typically available in equity.  534 U.S. at 210-12.  The fiduciary argued it was seeking restitution, which was a form of equitable relief, but the Supreme Court rejected this argument, stating

> However, not all relief falling under the rubric of restitution is available in equity. In the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity.  Thus, "restitution is a legal remedy when ordered in a case at law and an equitable remedy ... when ordered in an equity case," and whether it is legal or equitable depends on "the basis for [the plaintiff's] claim" and the nature of the underlying remedies sought.
>
> . . .
>
> Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.
>
> The basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to some funds for benefits that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents.

Knudson, 534 U.S. at 212-18.  The Court also rejected the argument that the common law of trusts provided sufficient equitable remedies to allow an action under § 502(a)(3).  Knudson, 534 U.S. at 219.

Both before and after <u>Mertens</u>, various circuits had held that tax-related money damages were traditionally legal, not equitable, relief, and therefore not recoverable under § 1132(a)(3). <u>E.g.</u>, <u>Novak v. Andersen Corp.</u>, 962 F.2d 757, 761 (8th Cir. 1992) (holding that ERISA does not authorize relief for tax losses associated with employer's failure to give statutorily required notice of rollover option); <u>Armstrong v. Jefferson Smurfit Corp.</u>, 30 F.3d 11 (1st Cir. 1994)(failure to give tax advise as to lump sum payments does not entitle participants to recover taxes paid); <u>Farr</u>, 151 F.3d at 916 ("Plaintiffs may not recover their tax benefit losses under § 502(a)(3) despite the fact that conclusion leaves Plaintiffs without a remedy for an alleged breach of fiduciary duty under ERISA."). Subsequent Supreme Court cases, however, made things a little more complicated.

In <u>Sereboff v. Mid Atlantic Med. Servs., Inc.</u>, 547 U.S. 356 (2006) the Supreme Court distinguished <u>Knudson</u> and found a request for restitution <u>was</u> equitable relief under § 502(a)(3). "This Court in <u>Knudson</u> did not reject Great-West's suit out of hand because it alleged a breach of contract and sought money, but because Great-West did not seek to recover a particular fund from the defendant. Mid Atlantic does." 547 U.S. at 363. "In other words, a claim that 'allege[s] breach of contract and [seeks] money' but '[seeks] recovery through a constructive trust or equitable lien on a specifically identified fund' in the

-25-

defendant's possession and control is equitable relief for purposes of § 1132(a)(3)." Popowski v. Parrott, 461 F.3d 1367, 1372 (11th Cir. 2006)(quoting Sereboff, 547 U.S. at 1875).

In CIGNA Corp., the Supreme Court addressed a suit by a beneficiary against a plan fiduciary about the terms of a plan. Before the merger of law and equity, this kind of lawsuit could have only been brought in a court of equity, not a court of law. The Supreme Court found that injunctions by the district court that required the plan administrator to pay money owed to retired beneficiaries under the plan as reformed was equitable relief. The Supreme Court stated that

> the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief. Equity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a 'surcharge,' was 'exclusively equitable.'

CIGNA Corp., 131 S. Ct. at 1880. The Court found that the fact that the defendant, "unlike the defendant in Mertens, is analogous to a trustee makes a critical difference." Id.

At oral argument, counsel for plaintiffs embraced the concept that the monetary damages they were seeking could be a form of equitable relief, although it was not a very warm embrace. The undisputed material facts are not sufficient for the Court to say that all monetary relief sought could not be a form of equitable

relief available under § 1332(a)(3), and therefore, summary judgment is denied.

## VI.

Plaintiffs' request to file an amended complaint to assert additional breaches of fiduciary duties by defendants' alleged failure to adopt the Plan on behalf of the Affiliated Employers is denied.  Although Fed. R. Civ. P. 15(a)(2) governs leave to amend a Complaint, after the deadline for amendment has passed the Court must consider the requirements of Fed. R. Civ. P. 16(b)(4), which provides that a Case Management and Scheduling Order "may be modified only for good cause and with the judge's consent."  The Scheduling Order in this case controls the course of action unless modified.  Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998).  To modify a Scheduling Order, a party must show good cause, and the party must show that despite the party's diligence the deadline could not be met.  Id., citing Fed. R. Civ. P. 16. The deadline for amendments to the complaint has long passed and plaintiffs have not provided the Court with any basis to conclude that despite its diligence, it could not have discovered that the Plan was not adopted on behalf of the Affiliated Employers prior to the deadline set forth in the Scheduling Order.

Accordingly, it is now

**ORDERED**:

1.   Defendant Innovative Pension Strategies, Inc.'s Partial Motion for Summary Judgment (Doc. #338), joined by defendants Independent Advisors of Florida, Inc., LWY Associates, Inc., Jeffrey Lambs, Eugene Gordon, Joseph Penchansky, and the Graduate Group (Docs. ##339, 342) is **DENIED.**

2.   Plaintiffs' renewed motions for remand and abstention, reconsideration, and application for certificate of appealability and alternative request to amend the complaint is **DENIED.**

3.   Trial is hereby set for the Court's December 3, 2012, trial term.

**DONE AND ORDERED** at Fort Myers, Florida, this __14th__ day of November, 2012.

_____
JOHN E. STEELE
United States District Judge

Copies:

Counsel of record

-28-